756 P.2d 929

**EMERGENCY MEDICAL TRANSPORT, INC., an Arizona corporation, dba American Ambulance, Petitioner–Appellant, Cross Appellee,**

v.

**CITY OF TEMPE, a municipal corporation; Arizona Department of Health Services, a Division of the State of Arizona, Respondents–Appellees,**

**Southwest Ambulance, Inc., an Arizona corporation, Respondent–Appellee, Cross Appellant.**

**No. 1 CA–CIV 9577.**

Court of Appeals of Arizona, Division 1, Department D.

May 19, 1988.

Reconsideration Denied July 5, 1988.

Ajamie, Fay & Webb by Richard E. Fay and Paul G. Ulrich, P.C. by Paul G. Ulrich, Phoenix, for petitioner-appellant, cross appellee.

Dennis M. O'Neill, Asst. City Atty., Tempe, for respondent-appellee City of Tempe.

Robert K. Corbin, Atty. Gen. by Shirley S. Simpson, Asst. Atty. Gen., Phoenix, for respondent-appellee Arizona Dept. of Health Services.

Beus, Gilbert, Wake & Morrill by Philip R. Wooten, Phoenix, for respondent-appellee, cross appellant.

## OPINION

FROEB, Judge.

This appeal concerns the validity of a contract entered into between the City of Tempe (Tempe) and Southwest Ambulance, Inc. (Southwest). The contract (hereinafter referred to as "Tempe–Southwest contract" or "contract"), entitled "Ambulance Transportation Service Agreement," calls for the provision of emergency ambulance services by Southwest within Tempe. The contract became effective after approval by the Director of Arizona Department of Health Services ("Director" and "DHS," respectively). Primary issues for our determination are: whether the Tempe–Southwest contract constitutes an unconstitutional usurpation by Tempe of regulatory power vested in DHS; and, whether the Director's approval of the Tempe–Southwest contract was an unconstitutional delegation of regulatory authority.

## REGULATORY BACKGROUND

Prior to July 1, 1982, ambulance companies were regulated by the Arizona Corporation Commission as public service corporations "carrying persons ... for hire." *See* Ariz. Const. art. XV, § 2 historical note. In November of 1980, as the result of a general election referendum, ambulances and ambulance services were deregulated, effective July 24, 1982. During this period of deregulation, ambulances were regulated "only with respect to essential public health and safety matters." *See* 1982 Ariz.Sess.Laws, Ch. 130, § 1.

In November, 1982, as the result of another general election referendum, ambulances and ambulance services were again made subject to regulation. In accordance with the re-regulation referendum, the Arizona Constitution was amended to include article XXVII. Section 1 of that article reads as follows:

The Legislature may provide for the regulation of ambulances and ambulance services in this State in all matters relating to services provided, routes served, response times and charges.

In response to article XXVII, the legislature enacted A.R.S. §§ 36–2232 to –2244. By passage of these statutes, the legislature intended "to provide for the regulation of ambulances and ambulance services in this state in accordance with article XXVII, Constitution of Arizona." 1983 Ariz.Sess. Laws, Ch. 324, § 1, effective May 5, 1983. The statutes bestow regulatory powers upon the Director and DHS in the area of ambulances and ambulance services. Specifically, the Director has the power, *inter alia*, to issue certificates of necessity, A.R. S. § 36–2233(B), and to adopt rules and regulations necessary to carry out the statutory provisions. A.R.S. §§ 36–2231(D), –2232(A); *see also* A.R.S. §§ 36–2202(A)(4), –2209(A)(2).

## ISSUANCE OF CERTIFICATES OF NECESSITY

Arizona statutes provide that "[a]ny person wishing to operate an ambulance service in this state shall apply to the department on a form prescribed by the director for a certificate of necessity." A.R.S. § 36–2233(A). In order to issue a certificate of necessity, the Director must first find that "public necessity requires the service or any part of the service proposed by the applicant." A.R.S. § 36–2233(B)(2).

By order dated August 21, 1985, the Director issued certificates of necessity to both Emergency Medical Transport, Inc. (Emergency Medical) and Southwest. The certificates of necessity issued to Emergency Medical and Southwest allowed these companies to provide both publicly dispatched and prescheduled ambulance transport within prescribed areas, including Tempe. Both certificates of necessity were to expire on November 30, 1986, at which time they could be renewed by the Director for a period of three years. *See* A.R.S. § 36–2235(B).

## TEMPE–SOUTHWEST CONTRACT

Prior to entering into the Tempe–Southwest contract, Tempe used a rotational dispatch system. All calls for emergency ambulance services were dispatched to one of three ambulance companies on a rotational basis. Under the rotational dispatch system, Tempe had problems maintaining a consistent level of service between ambulance companies. Thus, Tempe sought the emergency ambulance services of a single provider.

Tempe invited "proposals for the providing of emergency transportation of sick and injured individuals within the City of Tempe from accident sites and other locations to hospitals and emergency care facilities as requested by the City of Tempe." Four companies responded. Southwest, Professional Medical Transport, and Associated Ambulance all submitted bids which met the specifications outlined in the proposal request. Emergency Medical also submitted a bid proposal; however, Emergency Medical's bid apparently failed to meet the outlined specifications.

Tempe ultimately concluded that Southwest could offer the best services. Thus, Tempe awarded a contract for emergency ambulance services to Southwest, as sole provider for Tempe. The Tempe–Southwest contract was entered into on August 28, 1986, and became effective October 6, 1986. The contract provided that "[Tempe] must often request emergency ambulance service for members of the public through the operation of its police and fire departments." The contract further provided that "[Tempe] desires to have [Southwest] furnish such emergency ambulance service and [Southwest] desires to receive any and all such requests for service." Tempe reserved the right to obtain or to provide alternative services in the event Southwest would be unable to respond to a request for service.[1] The Tempe–Southwest contract does not affect prearranged ambulance services in Tempe.

By its terms, the Tempe–Southwest contract is effective for two years, "unless good cause exists under the state regulatory authority to terminate the contract." The contract is renewable by consent of the parties. Further terms are mentioned later when necessary to the decision.

## APPROVAL OF TEMPE–SOUTHWEST CONTRACT BY DIRECTOR

The Tempe–Southwest contract provided that it would not become effective until "[a]pproval of this Agreement by any governmental entity or regulatory body of any nature from whom approval of this Agreement is required by any statute, law, ordinance, rule, regulation, or other legal requirement." This provision required approval of the contract, pursuant to A.C.R.R. R9–13–1408(B), which provides in part:

All contracts, except those contracts with a federal agency, regarding the providing of ambulance and ambulance service will be approved by the Director and may require a public hearing to determine or alter rates or charges, or other provisions or to determine if any rate or charge is unjust, unreasonable, or noncompensatory....

The Tempe–Southwest contract was submitted to the Director for his approval. The Director, along with the Office of Ambulance Licensing, a division of DHS, and an assistant attorney general, reviewed the proposed contract. The Director found that "the rates and charges for ambulance services as specified in the contract are those set forth in Southwest's current certificate of necessity." Accordingly, the Director approved the contract by letter sent to the president of Southwest.

## APPEAL FROM DENIAL OF SPECIAL ACTION RELIEF

Emergency Medical, upon learning of the Tempe–Southwest contract and the Di-

---

1. Although Tempe reserved the right to provide alternative emergency ambulance services, we do not read this provision to allow Tempe to provide services without a certificate of necessity in violation of the Arizona statutes. As we read this provision, Tempe reserved the right to provide services after obtaining a certificate of necessity pursuant to A.R.S. § 36–2233, or when, due to the existing medical situation, it is deemed not advisable to await the arrival of an ambulance. See A.R.S. § 36–2208(B).

rector's approval, filed a petition for special action relief in the superior court against Tempe, DHS, and Southwest. The superior court accepted jurisdiction, but denied relief. Emergency Medical has appealed from the superior court's denial of relief, and raises the following issues:

(1) Has Tempe, by entering into the Tempe–Southwest contract, engaged in unconstitutional regulation of ambulances and ambulance services in violation of Ariz. Const. art. XXVII, § 1 and A.R.S. § 36–2201 *et seq.?*

(2) Is approval of the Tempe–Southwest contract by DHS, through the Director, an unconstitutional delegation of DHS's regulatory authority?

(3) Did the Director violate A.R.S. § 36–2234 when he approved the Tempe–Southwest contract without first holding a hearing?

Southwest filed a cross-appeal raising the following issues and cross issues:

(1) Did the trial court err in accepting jurisdiction of Emergency Medical's special actions?

(2) Did the trial court err in denying Southwest its attorney's fees?

(3) Is Southwest entitled to attorney's fees on appeal?

As expanded upon later, we hold that Tempe has not regulated ambulances or ambulance services and DHS has not delegated regulatory authority. Thus, we affirm the judgment of the trial court. We further affirm the denial of Southwest's attorney's fees in the trial court, and deny attorney's fees on appeal. Because Emergency Medical did not raise the issue in the trial court and thus did not preserve the issue for appellate review, we do not reach the issue of whether the Director violated A.R.S. § 36–2234 when he approved the contract without first holding a hearing.

## HAS TEMPE ENGAGED IN UNCONSTITUTIONAL REGULATION?

■ We conclude that, by entering into the Tempe–Southwest contract, Tempe has not engaged in regulation, but has instead acted lawfully pursuant to its home rule charter and its police powers. The fact that one party to the Tempe–Southwest contract is a municipal corporation does not somehow convert that agreement into regulation.

The statutes themselves recognize the participation and cooperation of many entities in the area of ambulance services, including political subdivisions, hospitals, utilities, communications media, and private telephone companies. *See, e.g.,* A.R.S. §§ 36–2207, –2209(A)(3), –2209(B)(1), (4), (7), –2213(1). These entities may constitutionally conduct activities and enter into contracts in the area of ambulance services so long as their activities do not conflict with the statutes, or the rules, regulations or certificates of necessity issued by the Director.

The Tempe–Southwest contract complies with, and repeatedly refers to, the laws of Arizona, the rules and regulations of the Director, and Southwest's certificate of necessity. The only contractual provision that can be said to be in conflict with the statutes, rules, regulations, or Southwest's certificate of necessity relates to response times. The contract provides for shorter response times than are required by Southwest's certificate of necessity. However, the response times prescribed by the Director in Southwest's certificate of necessity are maximums. Southwest may voluntarily agree, without violating any statute, rule, regulation, or its certificate, to shorter response times.

It is, of course, possible that the Director will at some time in the future prescribe response times which are shorter than those set forth in the contract. Tempe and Southwest have provided for that possibility. The contract provides that "response times shall conform to those approved by the Arizona Department of Health Services and set forth in [Southwest's] Certificate of Necessity." The contract further provides that "[a]t all times [Southwest] will comply with the response times ... set forth in [its] Certificate of Necessity and pursuant to the Laws and Regulations pertaining to the provision of ambulance services includ-

ing all Orders and Decisions of the Director of the Department of Health Services." Finally, the contract states, "[n]o provisions of this Agreement shall be construed to require [Southwest] to violate any Orders or Decisions issued by the Director of the Arizona Department of Health Services or any governing statute or administrative rules regarding the provision of ambulance or ambulance service to the public."

Since contracts should be interpreted, whenever possible, in such a way as to uphold them, *Byke Constr. Co. v. Miller*, 140 Ariz. 57, 680 P.2d 193 (App.1984), we interpret the Tempe–Southwest contract to provide that the response times specified in the contract shall control only until the Director sets shorter response times; in that event, the shorter response times shall control.

In sum, we hold that Tempe has not undertaken to regulate in the area of ambulances and ambulance services by entering into the Tempe–Southwest contract. The contract is in compliance with the laws of Arizona and the rules and regulations of DHS.

## HAS DHS DELEGATED REGULATORY AUTHORITY?

■ Since Tempe has not undertaken to regulate, it follows that DHS cannot be said to have delegated regulatory power. Furthermore, DHS has maintained control over all important aspects of ambulances and ambulance services, including issuance of certificates of necessity and the fixing of minimum rates and response times. *See* A.R.S. §§ 36–2233, –2239. For example, DHS may at any time, without consultation with or approval by Tempe, adjust the rates and fares chargeable by Southwest. A.R.S. § 36–2239; *cf. City of Phoenix v. Long*, 158 Ariz. 59, 761 P.2d 133 (App.1988) (holding that various Arizona municipalities had not delegated or surrendered municipal power to utility companies by entering into a contract granting the utilities options to purchase effluent). Thus, we hold that DHS's approval of the Tempe–Southwest contract, through the Director, does not

constitute an unlawful delegation of regulatory authority.

## ATTORNEY'S FEES

The trial court denied Southwest's request for attorney's fees, stating:

This Court has carefully considered the six factors listed in *Associated Indemnity Corporation v. Warner*, 143 Ariz. 567, 570 [694 P.2d 1181] (1985), and concludes that a fee award would be inappropriate in this case. Plaintiff's complaint raises issues of public importance. Plaintiff should not be discouraged from presenting those issues by the threat of a fee award in what is essentially not a contract action between private parties. We acknowledge that we could award fees under *Marcus v. Fox*, 150 Ariz. 333 [723 P.2d 682] (1986), since the validity of a contract was in question here. Yet the fundamental question raised in this case was not one of contract interpretation or validity but, rather, regulatory power under Arizona statutes. For this reason, Southwest Ambulance's motion for an Award of Attorneys' Fees is denied.

We find no abuse of the trial court's discretion in failing to grant attorney's fees pursuant to A.R.S. § 12–341.01. *See Great Western Bank & Trust Co. v. Pima Sav. & Loan Ass'n*, 149 Ariz. 364, 718 P.2d 1017 (App.1986).

■ Southwest also sought attorney's fees under A.R.S. § 12–349, claiming that Emergency Medical's special action was frivolous. The trial court did not address this argument directly. However, as quoted above, in connection with Southwest's application for attorney's fees under A.R.S. § 12–341.01, the trial court found that "[p]laintiff's complaint raises issues of public importance." Without expressing an opinion as to whether the trial court implicitly ruled on the frivolity of the special action, we find that Emergency Medical's suit was not frivolous. Thus, we uphold the denial of attorney's fees in the trial proceedings. In our discretion, we deny attorney's fees for the appeal.

In light of our resolution of the issues discussed, we need not address the other issues raised. The judgment is affirmed.

GRANT, P.J., and CONTRERAS, J., concur.