902 P.2d 1362

**SOUTHWEST AMBULANCE, INC., an Arizona corporation; Arizona Medical Transport and Ambulance Co., Inc., an Arizona corporation dba AMT; Rural/Metro Corporation, an Arizona corporation, Plaintiffs–Appellees,**

v.

**ARIZONA DEPARTMENT OF HEALTH SERVICES; Does I–X, Defendants–Appellants.**

**No. 1 CA–CV 92–0476.**

Court of Appeals of Arizona, Division 1, Department B.

March 7, 1995.

Review Denied Sept. 26, 1995.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Grant Woods, Atty. Gen. by Charles S. Pierson and Terri M. Skladany, Asst. Attys. Gen., Phoenix, for defendants-appellants.

DeConcini McDonald Brammer Yetwin & Lacy, P.C. by Philip R. Wooten and James E. Padish, Phoenix, for plaintiffs-appellees.

**OPINION**

KLEINSCHMIDT, Judge.

The Arizona Department of Health Services appeals from a ruling of the trial court that ambulance rate schedules issued by the Department were invalid because they were not promulgated according to law. We believe that the trial court was correct, and we affirm its judgment. We have no record of what occurred in the administrative hearings which are referred to throughout this opinion. We base our understanding of what occurred in those proceedings on what the parties describe in their briefs.

### FACTS AND PROCEDURAL BACKGROUND

Prior to 1982, Arizona ambulance companies were regulated by the Arizona Corporation Commission as public service corporations "carrying persons ... for hire." Ariz. Const. art. XV, § 2 historical note; *Emergency Medical Transport, Inc. v. City of Tempe*, 157 Ariz. 260, 261, 756 P.2d 929, 930 (App.1988). Ambulance companies were deregulated as a result of a 1980 general election referendum. *Emergency Medical Transport*, 157 Ariz. at 261, 756 P.2d at 930. In November 1982, as a result of another

general election referendum, ambulance companies were again made subject to regulation, not by the Corporation Commission, but by the legislature. *Id.;* Ariz. Const. art. XXVII, § 1. Consequently, the legislature enacted Arizona Revised Statutes Annotated ("A.R.S.") sections 36–2232 to 36–2244 to provide for the mandated regulation. 1983 Ariz.Sess.Laws, Ch. 324, § 1, effective May 5, 1983; *Emergency Medical Transport,* 157 Ariz. at 261, 756 P.2d at 930. The legislature delegated the responsibility for regulation to the Director of the Department of Health Services. A.R.S. § 36–2232; *Emergency Medical Transport,* 157 Ariz. at 261, 756 P.2d at 930.

In 1985, Southwest Ambulance, Inc., was a party in an administrative hearing held by the Department of Health Services to determine which applicants would receive certificates of necessity to operate ambulances in the Phoenix area. As a part of the same hearing, the Department intended to establish rates and charges for the ambulance companies, as required by A.R.S. section 36–2234. During this proceeding, the Department produced "Ambulance Service Schedule Number One" which was used to establish the rates and other criteria the Department intended to impose on the ambulance companies. Southwest successfully objected to the admission of this schedule into evidence, arguing that since the document contained matters that pertained generally to ambulance service companies statewide, it should have been promulgated as an administrative rule. The procedure relating to the adoption of administrative rules is spelled out in the Administrative Procedures Act, A.R.S. sections 41–1001 through 41–1071, and requires much more in the way of public notice and comment than the notice required for an ordinary rate hearing. The contested document was not admitted into evidence.

After the hearing, the Department issued a decision and order which was followed by a schedule of rates and charges that ambulance service companies operating in the Phoenix area, including Southwest, could charge. The schedule, which was similar to the "Ambulance Service Schedule Number One" which had been presented but not admitted

into evidence at the rate hearing, contained more than just the dollar amounts the companies could charge. For example, it specified rules as to how fractions of an hour were to be charged, how the transport of multiple patients was to be charged, how standby charges could be calculated, and when a higher advanced life support rate, as opposed to basic life support rate, could be charged. Southwest disputes that the Director actually approved and adopted the schedules as to when the higher advanced life support rate could be charged.

Southwest requested a rehearing of the rate decision. This request was denied. It then brought an action under the Administrative Review Act, A.R.S. sections 12–901 through 12–914, appealing the decision with regard to the dollar amounts the Department had set. It did not, however, challenge anything else about the validity of the schedules. The record does not disclose the outcome of the administrative action.

In 1987, a public hearing was held on Southwest's application for a certificate of necessity for service and to establish rates and charges for service in the Casa Grande area. After the hearing, the Department issued a decision and an order setting rates for service in Casa Grande. Later, the Department prepared and issued a rate schedule, which reflected the rates in the rate decision and order. Apparently, Southwest never objected to this schedule.

In 1988, the Department held a public rate hearing and issued a decision and order approving a rate adjustment for ambulance companies in the Phoenix metropolitan area, which it referred to as the "Phoenix Group." The Department accepted a stipulation by the members of the Phoenix Group, including Southwest, wherein new rates and charges consistent with the Department's "Ambulance Service Schedule Number Two" were agreed to. Again, Southwest disputes that the stipulation included an agreement as to when the ambulance companies could charge for advanced life support services.

As alluded to earlier, there is a difference in the rates allowed for advanced life support, as opposed to basic life support, services. Advanced life support refers to the

more sophisticated service provided by paramedics or intermediate emergency medical technicians. *See* A.A.C. R9–13–201(4). Basic life support is performed by basic emergency medical technicians who do not have the same level of training as paramedics or intermediate emergency medical technicians. *See* A.A.C. R9–13–201(14).

Shortly after the Department had assumed responsibility for regulating ambulance companies, it adopted a Uniform Chart of Accounts (later renamed the Uniform Reporting Guide) which required the companies to provide financial data regarding their operation to the Department and described how rates should be charged. Under the Uniform Chart of Accounts, the determination of when advanced life support rates could be charged was different from that under the schedules. Apparently, after the 1985 hearings, there was some confusion as to which method of determining advanced life support rates controlled. The Department maintains that the schedules controlled after the 1985 hearings while Southwest argues that the Uniform Chart of Accounts, which it was operating under, controlled.

In late 1989, a Department employee, who apparently recognized the inconsistency between the schedules and the Uniform Chart of Accounts, sent a letter to all ambulance companies directing that advanced life support and basic life support charges were to be assessed in accordance with the schedules rather than the Uniform Chart of Accounts or the Uniform Reporting Guide. The schedules provided:

> An ambulance service may apply the approved Advanced Life Support base rate if **ALL** of the following apply: (1) the ambulance is staffed by ALS certified personnel, (2) is equipped with all required ALS medical equipment and supplies for the ALS personnel in the ambulance, and (3) if one or more of those specific and specialized and authorized treatment activities or procedures contained in A.C.R.R. R9–13–402 is administered to the individual/patient. If all three requirements do not apply, then only a Basic Life Support base rate will be assessed to the individual/patient.

The schedules were more restrictive than the Uniform Chart of Accounts as to when the ambulance companies could charge the higher advanced life support rate.

Southwest was dissatisfied with this resolution of the inconsistency between the schedules and the Uniform Chart of Accounts. It sued the Department in 1990, seeking an injunction and a declaratory judgment that the schedules promulgated by the Department were invalid because they were "rules" and had not been adopted in accordance with the Administrative Procedures Act. The trial court agreed with Southwest and entered an order declaring the schedules invalid. The Department appeals this decision.

## THE SCHEDULES SHOULD HAVE BEEN PROMULGATED AS RULES UNDER THE ADMINISTRATIVE PROCEDURES ACT

■ Arizona Revised Statutes Annotated section 41–1001(17) defines "rule" for purposes of the Administrative Procedures Act:

> "Rule" means an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency. . . .

As we have already observed, the schedules prescribing the dollar amounts which an ambulance company may charge may be unique to each company. If the schedules only provided for rates, all parties agree that the schedules would not be "rules" within the meaning of the Administrative Procedures Act. The schedules, however, do more than set the applicable dollar amounts that an ambulance service company can charge for its services. They also specify such things as how a fraction of an hour is to be charged, how mileage is to be charged, the assessment of charges for the transport of multiple patients, what constitutes a minimum charge, when the rate for advanced life support may be charged, and other items which are generally applicable to all ambulance companies statewide. Thus, they contain the elements of a rule, and should have been adopted in accordance with the rule-making procedure. *Cochise County v. Arizona Health Care Cost*

*Containment System,* 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991); *see generally* FRANK E. COOPER, ADMINISTRATIVE AGENCIES AND THE COURTS 275–90 (1951) (discussing the legal effect of rules).

 Two events since the adoption of the challenged schedules lead us to question whether this declaratory judgment action is moot. First, after the schedule was adopted, the legislature, in 1991, amended A.R.S. section 36–2239 to include new subsections F and H. These new subsections specify when a charge for advanced life support may be made. The statute is consistent with the schedules, and not with the Uniform Chart of Accounts or the Uniform Reporting Guide. All parties concede that the statute controls, and that nothing that the Department has done in the area of advanced life support charges since the adoption of the statute is irregular. Second, Southwest challenges only the Phoenix schedule promulgated in 1985, the 1988 amendment to that schedule, and the 1987 schedule for Casa Grande. Southwest no longer operates under any of these schedules because they have been superseded. The parties urge, and we agree, that the case should nonetheless proceed because it may assist public officials in the future administration of their duties. *Farmers Ins. Co. v. Arizona State Land Dep't,* 136 Ariz. 369, 375, 666 P.2d 469, 475 (App.1982). The point to be made is that whenever a regulatory order is promulgated that includes anything that is properly the subject of a rule, the rule-making process must be followed. *Carondelet Health Serv. v. Arizona Health Care Sys.,* 182 Ariz. 221, 226, 895 P.2d 133, 138–40 (App.1994); *Cochise County v. Arizona Health Care Cost Containment Sys.,* 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991). Finally, the case should proceed because the issue of attorneys' fees needs to be resolved.

## SOUTHWEST WAS NOT BARRED FROM BRINGING A DECLARATORY JUDGMENT ACTION

The Department does not really disagree with any of the foregoing. It argues, however, that Southwest should have been barred from bringing a declaratory judgment action because it failed to exhaust its administrative remedies. Southwest did not raise the question of whether the schedule had to be promulgated as a rule in its appeal of the initial rate order under the Administrative Review Act. Nor did it appeal the subsequent rate orders pertaining to Ambulance Schedule Number Two and Ambulance Schedule Number One for the Casa Grande area.

Arizona Revised Statutes Annotated section 12–902(B) provides that parties to a proceeding shall be barred from obtaining judicial review of an administrative decision unless review of the decision is sought within the time and manner provided in the Administrative Review Act. The Administrative Review Act defines "administrative decision" or "decision" in A.R.S. section 12–901(2) as:

> [A]ny decision, order or determination of an administrative agency rendered in a case which affects the legal rights, duties or privileges of persons and which terminates the proceeding before the administrative agency.... *"Administrative decision" or "decision" does not mean or include rules, regulations, standards or statements of policy of general application issued by an administrative agency to implement, interpret or make specific the legislation enforced or administered by it unless the rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding,* nor does it mean or include regulations concerning the internal management of the agency not affecting private rights or interests.

(emphasis added).

A strong argument can be made that the action taken by the Department in issuing rate schedules was not an "administrative decision" or "decision" within the definition in A.R.S. section 901(2) because the issuance involved the validity of a rule which had not been challenged in any proceeding. *See Arizona Board of Regents v. Arizona Pub. Safety Retirement Fund Manager Adm'r,* 160 Ariz. 150, 154, 771 P.2d 880, 884 (App.1989) (discussing the definition of "administrative decision" and the requirement to proceed under the Administrative Review Act).

More important, however, an agency's actions that go beyond its statutory power can be challenged for lack of jurisdiction in a collateral proceeding. *Id.* at 156, 771 P.2d at 886; *Dallas v. Arizona Corp. Comm'n,* 86 Ariz. 345, 347–48, 346 P.2d 152, 154–55 (1959); *Tucson Warehouse & Transfer Co., Inc. v. Al's Transfer, Inc.,* 77 Ariz. 323, 325, 271 P.2d 477, 479 (1954). In this case, Southwest is not barred from bringing a collateral action since the Department's promulgation of the schedules in question without following the rule-making procedures in the Administrative Procedures Act was beyond its statutory power. *See* 2 FRANK E. COOPER, STATE ADMINISTRATIVE LAW 636–40 (1970) (providing that actions for declaratory judgment are proper collateral attacks to administrative actions).

### *SOUTHWEST IS ENTITLED TO ATTORNEYS' FEES*

The Department argues that the trial court erred in awarding Southwest attorneys' fees. Arizona Revised Statutes Annotated section 12–348 states:

A. In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party ... which prevails by adjudication on the merits in any of the following:

. . . .

3. A proceeding pursuant to § 41–1034.

Arizona Revised Statutes Annotated section 41–1034 states:

Any person who is or may be affected by a rule may obtain a judicial declaration of the validity of the rule by filing an action for declaratory relief in the superior court in Maricopa County in accordance with title 12, chapter 10, article 2.

The Department argues that Southwest did not bring this action under A.R.S. section 41–1034 because it was not challenging a "rule" which had already been adopted. Southwest, the Department says, was complaining that it was subject to a schedule that *should have been a rule.* We hold that the schedules issued by the Department should have been adopted as rules and whether they were or not, Southwest was forced to operate in conformity with them. It was aggrieved in just the manner contemplated by A.R.S. sections 41–1034 and 12–348. Southwest is also entitled to attorneys' fees on appeal under A.R.S. section 12–348(A)(3).

The judgment of the trial court is affirmed.

McGREGOR, P.J., and DRUKE, J.,[1] concur.