11 P.3d 1072

SAMARITAN HEALTH SYSTEM, an Arizona corporation; Arrowhead Hospital, an Arizona corporation; Medical Environments, Inc., a California corporation, d/b/a Bullhead Community Hospital; Carondelet Health Services, Inc., an Arizona corporation, d/b/a Carondelet St. Joseph's Hospital and Carondelet St. Mary's Hospital; Casa Grande Regional Medical Center, an Arizona corporation; Chandler Regional Hospital, an Arizona corporation; Mesa General Hospital, an Arizona corporation; Sun Health Corporation, an Memorial Hospital, an Arizona corporation, d/b/a Del E. Webb and Walter O. Boswell Memorial Hospital; Flagstaff Medical Center, Inc., an Arizona corporation; Healthwest Regional Medical Center, an Arizona corporation; Holy Cross Hospital and Health Center, Inc., an Arizona corporation; John C. Lincoln Hospital and Health Corporation, an Arizona corporation; Kingman Hospital, Inc., an Arizona corporation, d/b/a Kingman Regional Medical Center; Maricopa County Medical Center, an Arizona corporation; Mesa General Hospital Medical Center, Inc., an Arizona corporation; Lutheran Health Network, an Arizona corporation, d/b/a Mesa Lutheran Hospital and Valley Lutheran Hospital; Paradise Valley Hospital, an Arizona corporation; Phoenix Baptist Hospital, an Arizona corporation;

Phoenix Childrens Hospital, an Arizona corporation; Phoenix Memorial Hospital, an Arizona corporation; Scottsdale Memorial Hospital, an Arizona corporation; Mercy Healthcare Arizona, an Arizona corporation, d/b/a St. Joseph's Hospital and Medical Center; Sierra Vista Community Hospital, an Arizona corporation; Tucson Medical Center, an Arizona corporation; University Medical Center Corporation; an Arizona corporation; Yavapai Regional Medical Center, an Arizona corporation; Yuma Regional Medical Center, an Arizona corporation; and Marcus J. Lawrence Medical Center, an Arizona corporation, Plaintiffs–Appellees, Cross–Appellants,

v.

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an agency of the State of Arizona; John H. Kelly, in his official capacity as Director, Defendants–Appellants, Cross–Appellees.

No. 1 CA–CV 99–0522.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 24, 2000.

Gammage & Burnham P.L.C. by Richard B. Burnham, Cameron C. Artigue, Christopher A. Schmaltz, Phoenix, for Appellees.

Johnston & Kelly, P.L.C. by Logan T. Johnston, Anne C. Longo, Charles J. Adornetto, Phoenix, for Appellants.

## OPINION

TOCI, Presiding Judge.

¶ 1 Plaintiff hospitals and medical centers ("plaintiffs") sought a declaratory judgment that the Arizona Health Care Cost Containment System ("AHCCCS") rule governing outlier threshold adjustments to their tiered per diem reimbursements, Arizona Administrative Code Rule R9–22–712(A)(6) ("Rule 712"), was invalid. AHCCCS moved to dismiss the claim on the basis that plaintiffs had failed to exhaust administrative remedies. The trial court found that the outlier adjustments were not legislatively authorized and held that plaintiffs could seek a declaratory judgment under Arizona Revised Statutes Annotated ("A.R.S.") section 41–1034 (1999) without having first exhausted their administrative remedies. We hold that section 41–1034 does not permit declaratory judgment actions founded on the assertion that an agency rule exceeds the scope of the agency's authority. Therefore, we reverse the court's judgment and remand for dismissal of plaintiffs' complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 AHCCCS is a state program providing hospital and medical coverage to qualified individuals. A.R.S. §§ 36–2901 to –2976 (Supp.1999–2000). The Arizona Legislature directed the AHCCCS Administration to adopt a "tiered per diem" reimbursement methodology in order to reimburse hospitals. A.R.S. § 36–2903.01(J). This reimbursement system is to be cost-based. *Id.*

¶ 3 Ordinarily, AHCCCS pays hospitals a fixed amount for each day that a patient spends in the hospital. AHCCCS has calculated these "per diems" to cover various categories of hospital treatment so there is one per diem for surgery patients, another for intensive care patients, and so forth. As long as the per diem accurately reflects the average costs of the particular category of care, the hospitals recover their costs over the long term.

¶ 4 This case focuses on "outliers"—patients who incur extraordinarily high costs compared to similarly situated patients. If a hospital received only the regular per diem for outliers, it would incur major losses. Therefore, AHCCCS adopted a separate mechanism to reimburse hospitals for outliers.

¶ 5 First, AHCCCS uses a mathematical formula to pinpoint the claims that are a certain cost above the mean charge for a particular service and designates those claims as outliers. Then, AHCCCS pays hospitals a percentage of the total hospital charges for those outlier patients. This percentage is based on the statewide ratio of total hospital costs to total charges. At the time of trial, the ratio was approximately .60.

¶ 6 Because outliers are not paid by the per diems, AHCCCS did not include the outliers' costs in its calculation of per diem rates. In theory, a per diem represents the average daily cost of treating a "regular" patient, and AHCCCS calculated the per diems by averaging the costs of claims that were below the outlier threshold at that time. If outliers' costs had been included in calculating those averages, they would have unfairly raised the resulting per diem rate. Therefore, per diem rates reflect the average cost of non-outlier patients.

¶ 7 AHCCCS periodically revises the dollar thresholds at which a claim qualifies as an outlier. After outlier thresholds are raised, hospitals receive the standard per diems for cases that were previously reimbursed as

outliers. However, AHCCCS does not adjust the per diems to encompass the higher costs of the new claims that qualified as outliers under the old thresholds, but are now considered regular per diem claims under the new thresholds. Rather, AHCCCS continues to reimburse the hospitals with the per diems calculated without factoring in the higher costs of the former outlier patients.

¶ 8 Plaintiffs brought this lawsuit for declaratory relief challenging the validity of AHCCCS's outlier rules.[1] AHCCCS contended that the declaratory judgment action was improper because plaintiffs failed to exhaust their administrative remedies. Plaintiffs argued that they were seeking a judicial declaration that the outlier rules were invalid and therefore the action was properly before the court.

¶ 9 At trial AHCCCS presented evidence that the outlier calculations were part of "a mix of various calculations" that resulted from negotiations between the parties involving how to best implement the statutorily mandated tiered per diem methodology of reimbursement. Notwithstanding AHCCCS's interpretation of section 36–2903.01(J) as allowing AHCCCS to make outlier calculations, the trial court concluded that it could review the outlier rules because "AHCCCS [did] not dispute that [the outlier] adjustments have not been mandated or authorized by the legislature" and that the outlier rules were "inconsistent with [AHCCCS's] general mandate." Accordingly, the trial court ruled that outlier rules were invalid and awarded plaintiffs their attorneys' fees and costs.

¶ 10 AHCCCS timely filed this appeal contending that the trial court should have dismissed plaintiffs' claim because plaintiffs' failed to exhaust administrative remedies and, alternatively, the rates set by the outlier rules are exempt from the Administrative Procedures Act ("APA").[2] AHCCCS also contends that Rule 712 is valid and that the award of fees and costs was unjustified.

---

1. Plaintiffs also challenged AHCCCS's calculation of certain capital costs. Following a bench trial, the trial court ruled against plaintiffs on this issue. Plaintiffs filed a cross-appeal on this ruling, but have abandoned that issue on appeal.

2. A.R.S. §§ 41–1001 to –1092.12 (1999).

## II. DISCUSSION

### A. A.R.S. § 41–1033 is Inapplicable

¶ 11 AHCCCS contends the trial court lacked jurisdiction over this case because plaintiffs challenged the validity of an unpromulgated rule and, therefore, were required to pursue the administrative remedy provided by A.R.S. section 41–1033, rather than judicial relief. Section 41–1033 provides that any person requesting the making of a final agency rule or seeking review of an existing agency practice or policy statement that the person alleges to constitute a rule may seek such relief through a petition to the applicable agency, and subsequent appeal of the agency's decision to the Governor's Regulatory Review Council. *See* A.R.S. § 41–1033 (1999); *see also* A.R.S. § 41–1001(5)(1999).

¶ 12 This statute is not applicable. Although plaintiffs initially alleged that AHCCCS's outlier calculations were based on invalid, unpromulgated rules, AHCCCS subsequently promulgated Rule 712 to govern outlier calculation and reimbursement. Plaintiffs then challenged the substance of Rule 712, and abandoned their claims that AHCCCS had engaged in invalid rule-making under the APA. At trial, the parties essentially stipulated that the case dealt with the substance of the outlier rule actually promulgated by AHCCCS. Plaintiffs moved to amend their complaint to conform to the evidence presented at trial, and AHCCCS did not object. Therefore, this case did not involve allegations of improper rule-making subject to the administrative grievance procedure set forth in A.R.S. section 41–1033.

### B. TRIAL COURT LACKED JURISDICTION TO ISSUE DECLARATORY RELIEF UNDER A.R.S. § 41–1034

¶ 13 AHCCCS asserts that plaintiffs were required to exhaust their administrative remedies offered under A.R.S. section 36–2903.01(B)(4) prior to pursuing this lawsuit. Plaintiffs contend they could seek declaratory relief regarding the validity of Rule 712 under A.R.S. section 41–1034 without exhausting their administrative remedies. We review *de novo* a challenge to the superior court's jurisdiction. *In re Marriage of Crawford*, 180 Ariz. 324, 326, 884 P.2d 210, 212 (App.1994). We conclude that the trial court lacked jurisdiction over this case due to plaintiffs' failure to exhaust their administrative remedies.

¶ 14 Plaintiffs rely on *Southwest Ambulance, Inc. v. Arizona Department of Health Services*, 183 Ariz. 258, 902 P.2d 1362 (App. 1995), and *Phoenix Children's Hospital v. AHCCCS*, 195 Ariz. 277, 987 P.2d 763 (App. 1999), as support for their argument that they may seek declaratory relief on the validity of an administrative rule under A.R.S. section 41–1034 without first exhausting their administrative remedies. These cases do not support plaintiffs' position.

¶ 15 In *Southwest Ambulance*, this court concluded that the plaintiff ambulance companies could maintain a declaratory action against the Arizona Department of Health Services ("ADHS"), without first exhausting their administrative remedies, to challenge ADHS's adoption of ambulance rate schedules in violation of rule-making procedures of the APA. 183 Ariz. at 263, 902 P.2d at 1367. The court held that ADHS's adoption of the schedules was an act beyond its statutory power subject to declaratory relief under A.R.S. section 41–1034. *Id.*

¶ 16 *Southwest Ambulance* involved a challenge to ADHS's adoption of rules as improperly promulgated under the APA. 183 Ariz. at 261, 902 P.2d at 1365. As discussed, the matter at hand involves a challenge to a rule that was properly promulgated under the APA. Accordingly, *Southwest Ambulance* is not controlling.

¶ 17 Moreover, in *Phoenix Children's*, this court barred the plaintiff health care providers from bringing a similar declaratory judgment action to challenge "clinical criteria" adopted by AHCCCS for reimbursement for treatment of indigent newborns as improper unpromulgated rules. 195 Ariz. at 281–82, ¶ 16, 987 P.2d at 767–68. We overturned *Southwest Ambulance's* proclamation that such claims could be pursued through a declaratory action, noting that since the issuance of that decision, the legislature had amended A.R.S. section 41–1033 to specifically allow agency review of practices that are

alleged to be rules subject to the APA. *Id.* at 282, ¶ 15, 987 P.2d at 767. As a result, we held that the plaintiffs in *Phoenix Children's* had to pursue any grievance about unpromulgated rules through the administrative procedure set forth in A.R.S. section 41–1033, not through a declaratory judgment action under A.R.S. section 41–1034. *Id.* at 281–82, ¶ 16, 987 P.2d at 767–68.

¶ 18 More importantly, for the purposes of this matter, the *Phoenix Children's* decision also held that any claim that AHCCCS's adopted clinical criteria were arbitrary or capricious and exceeded AHCCCS's statutory authority had to be pursued through AHCCCS's statutory grievance procedures, A.R.S. section 36–2903.01(B)(4), before plaintiffs could seek judicial relief on those issues. 195 Ariz. at 282, ¶ 16, 987 P.2d at 768 ("Plaintiffs must exhaust the administrative grievance process before bringing their complaint to the court.").

■ ¶ 19 Furthermore, the APA distinguishes between claims that a rule lacks conformity with an agency's statutory authority and claims that an agency failed to follow required procedures when promulgating a rule. Section 41–1034 grants parties the right to seek declaratory judgments regarding the "validity" of rules. Section 41–1030(A)(1999) defines validity by stating that rules are "invalid" unless they are promulgated in substantial compliance with the procedures required by the APA. The APA also grants parties the right to seek relief from a rule that exceeds the legislature's grant of authority to an agency. Section 41–1001.01(A)(10)(a) (1999) provides that parties may file a complaint with the Administrative Rules Oversight Committee regarding a rule's "lack of conformity with statute or legislative intent," and section 41–1047 (1999) mandates an administrative review process for addressing these complaints. Because of this differential treatment and the fact that section 41–1034 refers only to procedural "validity," we hold that declaratory relief is not available to a party claiming that an agency exceeded its statutory authority when promulgating a rule.

■ ¶ 20 Requiring administrative exhaustion would have enabled both parties to clearly articulate their interpretation of the statute, which in turn would have provided a record for review by the trial court under the proper standard for review of an administrative decision. Creating such a record is one of the reasons for requiring exhaustion. *Estate of Bohn v. Waddell,* 174 Ariz. 239, 246, 848 P.2d 324, 331 (App.1992). Thus, the trial court should have required plaintiffs to exhaust their administrative remedies. *See Phoenix Children's,* 195 Ariz. at 282, ¶ 16, 987 P.2d at 768.

¶ 21 Plaintiffs argue that this interpretation of the applicable authorities renders A.R.S. section 41–1034 meaningless because post-exhaustion of administrative remedies challenges proceed to the courts through the Administrative Review Act,[3] not A.R.S. section 41–1034. Accordingly, they assert that plaintiffs may never utilize the declaratory relief provision of A.R.S. section 41–1034 to challenge agency acts. We disagree.

■ ¶ 22 Parties may seek declaratory relief against an agency through A.R.S. section 41–1034 in the following situations: (1) there is no administrative grievance procedure in place to resolve the issue (therefore administrative remedies cannot be pursued, let alone exhausted), *see Tanner Companies v. Arizona State Land Dep't,* 142 Ariz. 183, 187, 688 P.2d 1075, 1080 (App.1984)(declaratory judgment act is not proper means to seek review of agency decision if administrative appeal procedure exists); (2) the plaintiff can show that exhaustion of administrative remedies would prove futile,[4] *see Phoenix Children's,* 195 Ariz. at 282, ¶¶ 17–19, 987 P.2d at 768 (dismissing futility argument on basis of insufficient evidence of actual bias); or (3) the plaintiff asserts that a rule is invalid due to an agency's failure to comply with the applicable statutory procedures when promulgating the rule, *see* A.R.S. § 41–1030(A) (defining an invalid rule as one whose pro-

---

3. A.R.S. §§ 12–901 to –913 (1992).

4. Although plaintiffs' complaint asserted that exhaustion of administrative remedies was futile due to the pecuniary interest of AHCCCS's director, plaintiffs never developed that argument and have abandoned it on appeal.

mulgation was not in substantial compliance with procedural requirements).

## III. CONCLUSION

¶ 23 Plaintiffs were required to exhaust their administrative remedies before seeking judicial relief.[5] *Estate of Bohn,* 174 Ariz. at 246, 848 P.2d at 331. AHCCCS timely raised the exhaustion of administrative remedies defense, and, therefore, the trial court could not exercise jurisdiction over the action. *Medina v. Arizona Dep't of Transp.,* 185 Ariz. 414, 417–18, 916 P.2d 1130, 1133–34 (App.1995). We therefore reverse the trial court's judgment in favor of plaintiffs and vacate its award of attorneys' fees under A.R.S. section 12–348 to plaintiffs as the prevailing parties in this litigation. We remand this matter for dismissal of plaintiffs' complaint in furtherance of our decision.

CONCURRING: SHELDON H. WEISBERG, Judge, and JAMES B. SULT, Judge.

---

**5.** In light of our resolution of this issue, we do not address the merits of the outlier calculation issue, whether the rates set by the outlier rules are exempt from the APA, or the attorneys' fee award.