NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of the Guardianship of:

B.C.,[1] a Minor.

COURTNEY ELIZABETH COTA, *Petitioner/Appellant*,

*v.*

ELIZABETH KEENE, *Respondent/Appellee*.

No. 1 CA-CV 20-0301
FILED 9-30-2021

Appeal from the Superior Court in Yuma County
No. S1400GC201600080
The Honorable Lawrence C. Kenworthy, Judge

**DISMISSED IN PART, REVERSED IN PART**

COUNSEL

Fennemore Craig, P.C., Phoenix
By Timothy J. Berg, Bradley J. Pew
*Counsel for Petitioner/Appellant*

---

[1] This caption is amended as reflected. The amended caption shall be used on all further documents filed in this appeal.

Perkins Coie, LLP, Phoenix
By Karl J. Worsham, Joel Nomkin
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**G A S S**, Judge:

¶1         Appellant Courtney Elizabeth Cota challenges the superior court's 2016 order suspending her parental rights to her child, B.C., and appointing Appellee Elizabeth Keene, B.C.'s paternal grandmother, as B.C.'s guardian under Title 14. Cota also challenges the court's 2020 order continuing the parental rights suspension and the guardianship. Because Cota cannot challenge the 2016 order, we dismiss that portion of her appeal. But we reverse the 2020 order denying Cota's guardianship termination petition and remand to the superior court to terminate the guardianship. This case was placed in this court's Pro Bono Representation Program, and pro bono counsel was appointed to represent the parties in the appeal.[2]

**FACTUAL AND PROCEDURAL HISTORY**

¶2         In 2016, Keene petitioned to be appointed as B.C.'s temporary guardian, alleging B.C. suffered "neglect and abuse" in Cota's care. Keene's filings consisted of preprinted forms for guardianship proceedings under Title 14, which allows appointment of a guardian for an unmarried minor if "all parental rights of custody have been terminated or suspended by circumstances or prior court order." A.R.S. § 14-5204.A.

¶3         The superior court scheduled an evidentiary hearing. Cota did not appear at the time set, but B.C.'s father did. After a short delay, the hearing proceeded in Cota's absence. After a brief hearing, the superior court suspended Cota's parental rights "upon further order of the Court." The superior court appointed Keene as B.C.'s permanent guardian until "[B.C.] turns 18 or until the guardian is discharged from these duties by

---

[2] The court expresses its appreciation to pro bono counsel for contributing their time, energy, and other resources in pursuing this appeal. The court commends counsel for the excellent briefing and argument.

order of this Court." And the superior court directed Keene to file annual reports regarding "the status of the Minor and the need to continue the guardianship."

**¶4**        In 2018, Cota petitioned to terminate B.C.'s guardianship, alleging she was "stable and capable of caring for [B.C.]." Keene opposed termination. By that time, B.C.'s father had died.

**¶5**        In 2020, the superior court held a trial on Cota's petition to terminate B.C.'s guardianship. Following the bench trial, the superior court denied Cota's petition, saying Cota bore the burden of establishing (1) changed circumstances since it appointed Keene as B.C.'s guardian, (2) B.C. faced no danger with Cota, and (3) Cota could care for B.C. The superior court ruled Cota did not meet her burden and dismissed the petition.

**¶6**        Cota moved for reconsideration, which the superior court denied. Cota appealed both the 2016 and the 2020 order.

## DISCUSSION

### I.        Cota Cannot Challenge the 2016 Order in This Appeal.

**¶7**        Cota challenges both the 2016 and 2020 orders in this appeal. Keene contends we lack jurisdiction to consider Cota's challenge to the 2016 order because Cota did not timely appeal from it. *See In re Guardianship of Sommer*, 241 Ariz. 308, 311, ¶ 10 (App. 2016) ("[T]he legislature did not intend to disallow an immediate appeal from an order establishing a conservatorship or guardianship and appointing a guardian or conservator."). This court has an independent obligation to determine whether it has jurisdiction over an appeal. *Dabrowski v. Bartlett*, 246 Ariz. 504, 511, ¶ 13 (App. 2019). This court must dismiss those portions of an appeal over which it lacks jurisdiction. *Natale v. Natale*, 234 Ariz. 507, 509, ¶ 8 (App. 2014).

**¶8**        Cota contends she may challenge the 2016 order because the court never considered its guardianship order to be final, indicating "it would monitor this case to see if circumstances change." Though the superior court ordered Keene to file annual reports and conducted multiple status conferences to monitor the guardianship, it also included a Rule 54(c) certification in its order establishing the guardianship.

**¶9**        Cota also contends the 2016 order can be challenged at any time because it is void. *See State v. Bryant*, 219 Ariz. 514, 517–18, ¶¶ 13–14 (App. 2008). An "order is void if the court lacked jurisdiction over the

subject matter, over the person, or over the particular judgment or order entered." *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 74, ¶ 19 (App. 2004). An order is voidable if the superior court had subject matter jurisdiction but erred in issuing the order. *In re Marriage of Dougall*, 234 Ariz. 2, 6, ¶ 12 (App. 2013). A voidable judgment or order has "all the ordinary attributes of a valid judgment [or order] until it is reversed or vacated." *Id.* (citation omitted). This court reviews *de novo* challenges to the superior court's jurisdiction. *Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, 536, ¶ 13 (App. 2000).

¶10　　　　Cota contends the 2016 order is void, arguing the probate court lacked jurisdiction because the juvenile court "retains exclusive jurisdiction to terminate the parent-child relationship." But the superior court is a single trial court of general jurisdiction, and distinctions between juvenile court and probate court generally do not affect jurisdiction. *See Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 100 (1995); *State v. Rodriguez*, 205 Ariz. 392, 395, ¶ 9 n.2 (App. 2003). Though Arizona's constitution grants the superior court original jurisdiction over probate matters, it also says "[t]he jurisdiction and authority of the courts of this state in all proceedings and matters affecting juveniles shall be as provided by the legislature or the people by initiative or referendum." *See* Ariz. Const. art. VI, §§ 14.8, 15. To that end, the legislature granted the juvenile court exclusive jurisdiction to hear petitions to terminate a parent-child relationship. *See* A.R.S. §§ 8-531(9), -532.A.

¶11　　　　Keene, however, did not seek to terminate Cota and B.C.'s parent-child relationship. And though establishing a Title 14 guardian appointment when Cota's parental rights had not been terminated or suspended "may have been error, . . . the court still had jurisdiction to appoint a guardian." *See In re Guardianship of Mikrut*, 175 Ariz. 544, 546 (App. 1993). Cota, therefore, may not attack the 2016 order because she did not timely appeal it. *See id.* Assuming without deciding the superior court should have heard Keene's petition in a juvenile proceeding, that legal error would not deprive the superior court of jurisdiction. *See infra* ¶ 23; A.R.S. § 14-5204; *Mikrut*, 175 Ariz. at 546.

¶12　　　　Cota also argues a parent who is "denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials." *See Yavapai Cnty. Juv. Action No. J-8545*, 140 Ariz. 10, 14 (App. 1984). In *J-8545*, this court held "each periodic review of a dependency determination is a new determination of whether or not a child is dependent" and constitutes a final and appealable order. *Id.* Cota would not have been precluded from appealing the 2020 order even if she had

timely appealed from the 2016 order. *See id.* But *J-8545* does not authorize a retroactive challenge to the 2016 order. *See id.*

## II. The Superior Court Had No Authority to Continue the Title 14 Guardianship Over Cota's Objection.

**¶13**  Neither Cota nor Keene disputes this court's jurisdiction over Cota's challenge to the 2020 order. We agree. Keene petitioned to be appointed B.C.'s guardian under Title 14. And Cota's petition to terminate the guardianship also is grounded in Title 14. *See* A.R.S. § 14-5212.A ("Any person interested in the welfare of a ward . . . may petition for removal of a guardian on the ground that removal would be in the best interests of the ward."). Because the order denying Cota's motion to terminate the guardianship fully resolved the matter and had the effect of continuing Keene's Title 14 guardianship indefinitely, it is a final, appealable order under § 12-2101.A.9. This court, therefore, has jurisdiction under article VI, section 9, of the Arizona Constitution, and §§ 12-120.21.A.1 and 12-2101.A.9.

**¶14**  This court reviews rulings on petitions to terminate a guardianship under § 14-5212 for an abuse of discretion. *In re Guardianship of Kelly*, 184 Ariz. 514, 518 (App. 1996). The superior court abuses its discretion when it commits legal error or the record lacks competent evidence to support its decision. *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019); *see also In re Cosden's Est.*, 12 Ariz. App. 88, 89 (1970) ("The court's discretion to remove a guardian is not to be exercised arbitrarily or capriciously but is a legal discretion to be exercised with due regard to legal rights of all concerned.").

**¶15**  Cota contends the superior court erred by requiring her to show "circumstances ha[d] changed since [Keene] was appointed and there [was] no longer a danger to [B.C.] and/or she was able to care for [B.C.]."

**¶16**  In *Mikrut*, this court recognized "the probate court lacks jurisdiction to effect a *de facto* termination of the parent-child relationship. Although guardianship proceedings in Arizona are heard in probate court, the juvenile court has exclusive jurisdiction over petitions to terminate the parent-child relationship." 175 Ariz. at 547. Section 14-5212.A says a petition to remove a guardian must be "on the ground that removal would be in the best interests of the ward." *See also Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). But courts also must consider the guardianship's continuing effect on Cota's parental rights, which have not been terminated. *See Mikrut*, 175 Ariz. at 547 ("[A] decision to continue a guardianship that effectively terminates parental rights cannot be made

solely on the basis of the best interests of the child."); *see also In re Marriage of Friedman and Roels*, 244 Ariz. 111, 119, ¶ 31 (2018) ("[A] parent's rights 'do[] not evaporate simply because they have not been model parents or have lost temporary custody of their child.'") (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)); *Charboneau v. Super. Ct.*, 101 Ariz. 586, 588 (1967) ("The parent is the natural guardian of its child.").

**¶17** Keene relies on *Mikrut* to contend a presumption arises in favor of continuing the guardianship when the child becomes established in a home, neighborhood, and school. *See* 175 Ariz. at 548. This court, however, did not adopt or recognize such a presumption in *Mikrut*. Indeed, in *Mikrut*, this court only commented, in dicta, a presumption may be appropriate "when the parent-child relationship has been terminated or suspended after appropriate court proceedings." *Id.* Even if we assume the 2016 hearing, which proceeded without Cota, constituted "appropriate court proceedings"—an issue this court did not reach in *Mikrut*—the guardianship may not continue over Cota's objection. *See id.*

**¶18** To begin, the superior court did not rely on any *Mikrut* presumption. Instead, the superior court continued the guardianship because (1) Keene objected to it; and (2) Cota's "living arrangements . . . emotional state, and parenting abilities are different as to caring for one, versus two children." The reference to two children is a result of the superior court—more than a year earlier—reinstating Cota's parental rights to another child—K.C.—which would make B.C. the second child in Cota's home. Indeed, the guardian ad litem who recommended guardianship in 2016 changed her position at the 2020 hearing and said she believed Cota was "mentally adequate and able to parent her children."

**¶19** Keene cites no authority, and we are not aware of any, suggesting these are proper grounds to continue a guardianship over a natural parent's objection. *See Hutchison v. Hutchison*, 649 P.2d 38, 41 (Utah 1982) ("The parental presumption . . . cannot be rebutted merely by demonstrating that the opposing party possesses superior qualifications, has established a deeper bond with the child, or is able to provide more desirable circumstances.") (internal citation omitted).

**¶20** Next, best interests alone cannot support the continued guardianship. *See Mikrut*, 175 Ariz. at 547. Parental rights constitute a fundamental liberty interest. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005); *see also* A.R.S. § 1-601.A. Other states have recognized this interest in custody disputes between natural parents and non-parent guardians by requiring the guardian to show continuing the guardianship would serve

the minor child's best interests. *In re Guardianship of J.R.G.*, 708 P.2d 263, 267 (Mont. 1985) (citing cases); *see also Durkin v. Hinich*, 442 N.W.2d 148, 152 (Minn. 1989) ("there is a presumption in custody determinations that a natural parent is fit to raise his or her own child").

**¶21** Finally, as this court stated in *Mikrut*, when "a guardianship is based on parental consent and that consent is withdrawn due to the parent's changed circumstances, the probate court's refusal to terminate the guardianship may operate as a *de facto* termination of the parent's parental rights." 175 Ariz. at 547. Though Cota did not consent to B.C.'s guardianship, Cota's situation is like the *Mikrut* guardianship in two legally significant ways. First, neither Cota nor the parent in *Mikrut* consented to the guardianship. *See id.* Instead, Cota and the parent in *Mikrut* simply did not appear at the hearing in which the guardianship was established. *See id.* The only difference being in this case, Cota received notice and in *Mikrut*, the parent waived the notice. *See id.* Second, both here and in *Mikrut*, a natural parent sought to end the guardianship. *See id.* In short, the controlling facts in this case and in *Mikrut* are the same. *See id.*

**¶22** Here, as in *Mikrut*, (1) the guardianship must terminate; and (2) "[i]f the guardian believes the parent to be an unfit parent, he or she can petition the court pursuant to A.R.S. section 8-533 to terminate or suspend the parent-child relationship." *See id.* at 548. Keene did not file any Title 8 petition. Keene also did not seek relief under § 25-409.A (providing third party rights for legal decision-making or placement).

**¶23** Our resolution is consistent with the language of the statute, which allows the superior court to put a guardianship in place "if all parental rights of custody have been terminated or suspended by circumstances or prior court order." A.R.S. § 14-5204. Keene argues the superior court suspended Cota's rights during the 2016 hearing before the court went on to put the guardianship in place. That argument falls flat. In the absence of consent, a Title 14 guardianship is not appropriate unless the guardian establishes "all parental rights of custody" were terminated or suspended based on circumstances or a prior court order outside of the Title 14 guardianship. Our conclusion is consistent with the forms the various courts provide to litigants who wish to pursue a Title 14 guardianship. *See, e.g.*, *Required Forms to File a Guardianship of a Minor*, Ariz. Bar Found. 13, https://www.azcourthelp.org/finder/yuma-forms/2-probate-court-forms/6-guardianship-of-a-minor/1-appointment-4/937-1-preparing-the-first-court-papers-4/file ("WARNING: A GUARDIANSHIP UNDER TITLE XIV CANNOT BE GRANTED OVER A PARENT'S OBJECTION (DISAGREEMENT)." (emphasis original)); *To Petition for*

*Guardianship/Conservatorship for a Minor*, Jud. Branch of Ariz., https://superiorcourt.maricopa.gov/llrc/prob_pbgcm1/ (last updated Mar. 19, 2020) ("The parents will either sign a Voluntary Consent, **OR** after receiving notice of the Petition to Appoint a Permanent Guardian-Conservator, will not file papers or come to court to object to the appointment." (emphasis original)); *Guardianship and Conservatorship for a Minor*, Super Ct. of Ariz. in Maricopa Cnty., https://superiorcourt.maricopa.gov/media/3914/pbgcm1iz.pdf (last visited Sept. 14, 2021) ("If both parents are living and can be located, each parent may complete and sign a CONSENT to the appointment to be filed with the Court." (emphasis original)). These forms are not controlling precedent, but they are consistent with our interpretation. As an aside, the court form Keene used did not include a warning or notice about the need for Keene to secure parental consent, but that fact does not change the outcome here.

**CONCLUSION**

¶24      We reverse the 2020 order continuing the indefinite suspension of Cota's parental rights and the guardianship of B.C.



AMY M. WOOD • Clerk of the Court
FILED:    AA