895 P.2d 133

**CARONDELET HEALTH SERVICES, INC., dba St. Mary's Hospital and Health Center and dba St. Joseph's Hospital and Health Center, an Arizona corporation; Carondelet Health Systems, dba Holy Cross Hospital, an Arizona**

---

corporation; St. Joseph's Hospital and Medical Center, an Arizona corporation; Casa Grande Regional Medical Center, an Arizona corporation, Yuma Regional Medical Center, an Arizona corporation; Kingman Regional Hospital, an Arizona corporation; Yavapai Regional Medical Center, an Arizona corporation; Benson Hospital, an Arizona corporation; Northern Cochise Community Hospital, an Arizona corporation; Chandler Regional Hospital, an Arizona corporation; Maricopa County, a body politic; Phoenix Children's Hospital, an Arizona corporation; John C. Lincoln Hospital and Health Center, an Arizona corporation; DBH, Inc., A Delaware corporation, dba Southeast Arizona Medical Center, Plaintiffs–Appellants,

v.

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an agency of the State of Arizona and Leonard Kirschner, M.D., in his capacity as Director, Defendants–Appellees.

No. 1 CA–CV 92–0554.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 13, 1994.

Review Denied May 23, 1995.

Gammage & Burnham, P.L.L.C. by Richard B. Burnham, Cameron C. Artigue, Phoenix, for plaintiffs-appellants.

Johnston, Maynard, Grant & Parker by Logan T. Johnston, III, Catherine M. Dodd, Charles J. Adornetto, Phoenix, for defendants-appellees.

## OPINION

WEISBERG, Judge.

Appellants Carondelet Health Services, Inc., et al. (the "hospitals") are fourteen Arizona hospitals who challenge the Arizona Health Care Cost Containment System Administration's ("AHCCCS") interpretation and application of 1989 Arizona Session

Laws, Ch. 293, section 22 (the "session law"). The hospitals appeal from the superior court's judgment affirming the Director of AHCCCS' ("Director") decision to deny the hospitals relief. For the following reasons, we reverse and remand for a hearing on damages.

## FACTS AND PROCEDURAL HISTORY

Every Arizona hospital must file a "schedule of rates and charges" with the Department of Health Services ("DHS"). Ariz.Rev. Stat.Ann. ("A.R.S.") § 36–436. Each hospital sets its schedule of rates and charges based on the expected patient volume and revenue requirements. DHS then calculates the hospital's overall rate increase by comparing, at the projected volume, the hospital's revenue under the old rates against the hospital's revenue under the new rates.

In 1984, the legislature mandated that the reimbursement level of hospital rates and charges paid by AHCCCS be maintained at 1984 levels. A.R.S. § 36–2903.01. The legislature required the Director of AHCCCS to "adopt rules which . . . define 'adjusted billed charges' as that reimbursement level which has the effect of holding constant the schedule of rates and charges for a hospital in effect on April 1, 1984." A.R.S. § 36–2903.01(I)(1).[1] The required rules were adopted by AHCCCS in Arizona Administrative Code Regulation ("AACR") 9–22–706.

In order to maintain hospital reimbursement at 1984 levels, AHCCCS uses the rate package that hospitals file with DHS to adjust the amount paid by it on each hospital bill. Under this process, the agency assigns each hospital a multiplier which is used to convert its "full billed charges" into "adjusted billed charges." In 1984 each hospital started with a multiplier or adjusted billed charge factor ("ABC factor") of 1.0000. Each time a hospital files a rate increase package, the ABC factor is reduced by the same percentage as the rate increase calculated by DHS. When a hospital submits a bill for an AHCCCS patient, the full billed charges are multiplied by that hospital's ABC factor in order to discount the charges to the level reflected in the hospital's 1984 schedule of rates and charges.

In 1989, the legislature enacted the session law which required hospitals to report to DHS all charges and volumes by department on a six-month basis. 1989 Ariz.Sess.Laws, Ch. 293, § 22(A). Based on the information supplied in the report, DHS was then to calculate the difference between the expected and actual charges per volume and to report the results to AHCCCS. Id. § 22(B). The hospitals also were required, at any time they submitted a rate increase to DHS, to submit a charges and volume report, categorized by hospital department, relating to use by AHCCCS patients. Id. § 22(B). DHS was then to calculate the estimated effective rate increase for AHCCCS. Id. Finally, the hospitals were to report any unbundling[2] of services, and to provide an estimate of changes in charges and volume for AHCCCS patients due to the unbundling. Id. § 22(D). Based on the information DHS received from the volume and charges report, AHCCCS was directed to "recalculate, if necessary, the adjusted billed charge factor to the levels established pursuant to subsections B, C and D of this section for a hospital pursuant to sections 36–2903.01 and 36–2904." Id. § 22(E).

In late 1989 AHCCCS changed its analysis of ABC factors to implement the session law, comparing each hospital's charges per volume during the most recent six month period (the "current period") with the charges per volume during the previous six month period (the "base period"). If charges per volume had increased between the two periods, AHCCCS would conclude that there had been a rate hike over and above any rate increase reported to DHS in the schedule of rates and charges and would reduce the hospital's ABC factor accordingly.

---

1. Although this amount was increased by four percent in 1986 by A.R.S. § 36–2904(J)(5), future references will be to "1984 levels" without reference to this later increase.

2. The session law defines "unbundling" as a "process by which the hospitals begin to bill separately for a service that was initially included as part of [the] total price for another service." Id. § 22(H)(4).

The hospitals initiated administrative grievance proceedings before the AHCCCS Administration in 1990.[3] The hospitals argued that AHCCCS' methodology for computing ABC factors was a "rule" which must be promulgated in accordance with the Administrative Procedure Act[4] ("APA"); that AHCCCS' use of the charges and volume report violated due process; that AHCCCS' methodology was in violation of the session law and 1984 statute for failing to take into account such factors as case mix,[5] intensity[6] and seasonality;[7] that AHCCCS' use of unbundling of services amounted to a double penalty; that AHCCCS' reimbursement for pass-through items[8] was arbitrary and capricious; that AHCCCS improperly restricted the definition of new services; that AHCCCS' failure to implement ABC factor adjustments on a date certain was a violation of due process; and that AHCCCS is responsible for all damages resulting from use of the invalid ABC factors by health plan providers. Four days of hearings ensued. The parties stipulated that the grievance would address only the issue of liability, with damages to be addressed, if necessary, in later proceedings. At the completion of the hearings, the AHCCCS hearing officer's findings and conclusions were:

1) AHCCCS' change in the methodology of calculating ABC factors based on the 1989 session law constituted a "rule" under the APA, and AHCCCS had not complied with the APA. However, the legislature had specifically exempted AHCCCS from compliance with the APA.[9]

2) AHCCCS' use of the charges and volume report was rationally related to the objectives of the 1989 session law and therefore there was no due process violation;

3) the hospitals failed to meet their burden of proof of showing that the AHCCCS case mix index is increasing;

4) the hospitals failed to show that an increase in intensity is in conflict with the statute or session law;

5) the hospitals failed to meet their burden of proof of showing that AHCCCS' use of "unbundling" of services in the ABC factor amounts to a double penalty;

6) AHCCCS improperly restricted the definition of new services in violation of the session law;

7) AHCCCS' failure to implement ABC factor adjustments on a date certain is not rationally related to any legitimate state interest and therefore AHCCCS should develop a reasonable implementation date when all hospitals' ABC factors will be adjusted;

8) the hospitals failed to meet their burden of proof that AHCCCS' reimbursement for pass-through items was arbitrary and capricious and violated the 1984 statutory directives; and

9) AHCCCS is not responsible for underpayment by health plans due to the erroneous ABC factor analysis because

---

3. The entire ABC reimbursement practice was replaced by a per diem methodology on March 1, 1993. A.R.S. § 36–2903.01(J). However, the hospitals are seeking reimbursement for all damages caused by the agency's use of an invalid ABC methodology during 1989–1991.

4. A.R.S. §§ 41–1001 to 41–1066.

5. Case mix refers to the relative acuity of a group of patients within a hospital.

6. Intensity is defined as a measure of services rendered per patient day.

7. Seasonality is the term used to describe variations in hospital volume and utilization stemming from seasonal population changes, such as the influx of winter visitors to Phoenix.

8. Pass-through is defined by the session law as "any increase in revenue which results from an increase in acquisition cost and which is passed on to purchasers through formula pricing." § 22(H). The term most often applies to pharmacy and central supply items which are charged to patients at cost plus a set mark-up. There are also numerous items that a hospital is required to charge at its own cost, without any mark-up, including organs, rentals, blood and outside laboratory services. Both types of items are considered pass-through items.

9. In reaching this conclusion, the hearing officer relied on 1990 Ariz.Sess.Laws, Ch. 334, § 5. On appeal, however, both parties agree that this section is inapplicable, and that the ruling that AHCCCS was exempted from the APA was erroneous.

the health plans themselves should have been made a party to the proceedings under Title 9, Chapter 22, Article 8 of the AACR [10].

The hearing officer's recommendations were subject to review by the Director, who adopted the findings and conclusions of the hearing officer only to the extent they were consistent with his conclusion that the hospitals be denied any relief. The hospitals filed a timely appeal to the superior court. The superior court affirmed the agency's decision. The hospitals timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–2101(B) and 12–913.

## DISCUSSION

We address the following issue [11] in this appeal: Whether AHCCCS' method of adjusting ABC factors based on the report of charges and volume involved the application of a "rule" which must be promulgated pursuant to the APA.

### A. Standard of Review

Although we are free to draw our own legal conclusions in determining the proper interpretation of the applicable law, an administrative agency's interpretation of statutes and its own regulations is entitled to deference. *Capitol Castings, Inc. v. Arizona Dep't. of Economic Sec.*, 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992).

### B. Analysis

The hospitals argue that AHCCCS' use of the volume and charges report to adjust ABC factors is invalid because the agency failed to promulgate a rule as required by the APA.

In response, AHCCCS argues that 1) the methodology used is not a "rule" under the APA; 2) since the session law is silent as to

the necessity for rulemaking, the legislature did not intend that a rule be promulgated; and 3) the session law is self-executing and therefore no "rule" is necessary to implement the legislation. We reject each of these arguments and hold that AHCCCS was required to promulgate a rule under the APA.

### 1. The Methodology Used to Determine an ABC Factor is a "Rule"

It is undisputed that AHCCCS did not promulgate rules to enact the session law. Although both the hearing officer and Director determined that the subject methodology met the definition of a rule, they erroneously concluded that AHCCCS was exempt from the APA.[12] Now, however, AHCCCS maintains that the methodology used to reduce current charges to 1984 reimbursement levels is not a "rule" within the meaning of the APA. We disagree.

■ AHCCCS is expressly empowered to adopt interpretive rules to administer the AHCCCS system. A.R.S. § 36–2903.01(H). When adopting rules, AHCCCS must follow the requirements of the APA. *Cochise County v. AHCCCS*, 170 Ariz. 443, 445, 825 P.2d 968, 970 (App.1991). Under the APA, administrative rules must be promulgated pursuant to certain procedural standards. *See* A.R.S. §§ 41–1021 to 41–1035. APA rulemaking requires public notice, and the opportunity for public participation and comment, to ensure that those affected by a rule have adequate notice of the agency's proposed procedures and the opportunity for input into the consideration of those procedures. *See id.*

The APA defines a rule as:

An agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an

10. In their opening brief, the hospitals state, without analysis or citation, that AHCCCS should be responsible for damages incurred by plan providers. Because they have failed to develop this argument, or to cite to any legal authority in support of it, we decline to address this issue. *See* Ariz.R.Civ.App.P. 13(a)(6); *Adams v. Valley Nat'l Bank*, 139 Ariz. 340, 678 P.2d 525 (App. 1984).

11. The hospitals also raised the other issues argued below, mainly that the methodology used by AHCCCS was arbitrary and capricious and exceeded its statutory authority. Because of our disposition of the first issue, however, we need not reach these issues.

12. *See supra* note 9.

agency. Rule includes prescribing fees or the amendment or repeal of a prior rule but does not include intraagency memoranda.

A.R.S. § 41–1001(12).

■ Under this definition, AHCCCS' use of the volume and charges reports to further adjust ABC factors is a "rule." The statute requires that the statement be of "general applicability" and that it "implement, interpret or prescribe" law or policy or be an "amendment" of a prior rule. The first element is met since AHCCCS admits that its methodology is generally applied to all hospitals. The second requirement is also satisfied because the methodology meets several of the independent criteria listed by the APA as defining a rule: 1) it prescribes the policy and procedures AHCCCS will use to determine payment amounts; 2) it specifically "implements" the session law; and 3) the methodology amends the prior rule established in AACR 9–22–706. *See* A.R.S. § 41–1001(12). The agency's methodology employs rules of general application that determine the reimbursement levels for every hospital in Arizona. Moreover, it is a policy statement or clarification of how ABC factors

will be adjusted based on AHCCCS' interpretation of the session law. AHCCCS' implementation of the new methodology therefore meets the definition of a rule, which must ordinarily be promulgated in accordance with the APA.

■ AHCCCS, however, argues that the session law simply mandates that reimbursement be kept at 1984 levels, and that the factors which it considers in determining what amounts are equal to those levels merely represent internal agency bookkeeping that need not be promulgated by a rule. We disagree.

If this were mere arithmetic, we would agree that there would be no need for the adoption of a rule. The method for determining each hospital's reimbursement amount, however, is not a universally recognized formula that enables each party to independently verify the result. Rather, the AHCCCS methodology involves a complex calculation [13] with subjective components whose inclusion, or even definition, have a significant effect on the reimbursement amounts. The parties' many disputes over these substantive components highlight the subjectivity of AHCCCS' approach.[14] Clear-

---

13. To illustrate, the hearing officer set forth the calculations AHCCCS uses in determining how ABC factors will be adjusted:

First, AHCCCS looks at the base units per department (i.e.: the department medical/surgical is measured by patient day units; base units is therefore total patient days for the three (3) or six (6) month base period), the base charges (total charges per department in the base period), the current units and the current charges (both relating to the subsequent six (6) months). AHCCCS then subtracts any pass-through charges and new service charges of the department from the current charges of the department. This amount is then multiplied by the ABC rate in effect for the current period to arrive at 'adjusted current charges.' Adjusted current charges is then divided by the current units to arrive at a figure called 'actual charges per volume.' This amount is then compared to the 'expected charges per volume' (the base charges multiplied by the base ABC rate divided by the base units). The 'unexpected percentage change' is the percentage that the actual charges per volume exceeds the expected charges per volume. Each department is then weighted for the current period (the department's charges as a percent of the overall charges) and this percentage weight is multiplied by the unexpected

percentage charge [sic]. This figure is calculated for every department. Each department's figures are added together; the sum is the percentage used to make an adjustment to the ABC rate.

14. For just one example, although the lengths of hospitalizations have become shorter, accompanying tests and procedures have not decreased and thus hospitalizations are more intense because the same number of tests and procedures are performed in a shorter span of time. AHCCCS' methodology, however, equates increased intensity with a rate increase and therefore applies an ABC factor adjustment even when the rates have not increased and the increased intensity has actually saved AHCCCS money. To illustrate, assume that an appendectomy patient incurs a room charge of $200/day, an x-ray charge of $25 and a surgery charge of $100, and that due to changing physician practices the patient's hospital stay has decreased from five days in 1993 to four days in 1994. The total charge for a 1993 patient would then have been $1,125 while, due to the shorter stay, the charge for a 1994 patient would be reduced to $925. Thus, although no rates would have been increased and the total bill for hospitalization would have actually been decreased by $200, AHCCCS' methodology would penalize a hospital for a "rate in-

ly, AHCCCS' equation involves more than the application of simple mathematics.

■ We therefore agree with the hospitals that, although the session law focuses on a hospital's "volume," it does not set forth the calculations to be made and leaves much to AHCCCS' discretion, such as when its changes will go into effect and how the amount of reimbursement will be determined. Since AHCCCS' methodology of calculating ABC factors falls within the definition of a rule, such a rule must be promulgated in accordance with the provisions of the APA or it is invalid. A.R.S. § 41–1030; *Cochise County,* 170 Ariz. at 445, 825 P.2d at 970; *Havasu Heights Ranch & Dev. Corp. v. State Land Dep't.,* 158 Ariz. 552, 559, 764 P.2d 37, 44 (App.1988). Because no rule was promulgated pursuant to the APA, any changes in the ABC factor as a result of the charges and volume reports are void.

2. *The Legislature Did Not Exempt AHCCCS from the Requirements of the APA.*

AHCCCS next argues that, had the legislature intended the agency adopt a rule, it would have clearly stated that requirement. Therefore, AHCCCS reasons, it can be inferred from its silence that the legislature never envisioned the need for an explanatory rule. Again, we disagree.

■ All agencies are subject to the APA unless they are expressly exempted. A.R.S. § 41–1002(A). Interestingly, the legislature has specifically exempted AHCCCS from the requirements of the APA in other areas. *See e.g.,* A.R.S. § 41–1005(A)(9) (exemption when adopting capped fee-for-service schedule); 1990 Ariz.Sess.Laws, Ch. 334, § 5 (exemption when implementing provisions relating to mental health services); 1992 Ariz.Sess. Laws, Ch. 292, § 16 (exemption when implementing provisions relating to disproportionate share payments); 1992 Ariz.Sess.Laws, Ch. 301, § 61 (exemption when implementing provisions relating to mental health services); 1992 Ariz.Sess.Laws, Ch. 302, § 13 (allowing AHCCCS to submit rules directly to secretary of state without first gaining approval

and certification of attorney general). Accordingly, it is more reasonable to conclude that, had the legislature intended that AHCCCS be exempt from the APA when administering the session law, it would have so stated.

This conclusion is bolstered by the language of the session law which seems based upon the legislature's assumption that rules *would* be promulgated. The session law itself specifically refers to "levels established pursuant to subsections B, C, and D of this section for a hospital pursuant to sections 36–2903.01 and 36–2904." § 22(E). The only "levels" referred to are the "1984 reimbursement levels" set by A.R.S. 36–2903.01, which included the requirement that AHCCCS adopt rules. Moreover, the legislature indicated its intent that rules be promulgated to implement the session law by its reference in subsection F of the session law to any "rules adopted pursuant to this section." § 22(F). Accordingly, we conclude that AHCCCS is subject to the requirements of the APA when implementing the session law.

3. *The Session Law is Not Self–Executing*

■ Finally, AHCCCS argues that a rule is not necessary because the session law is "self-executing," and "no interpretation of the law's very specific requirements was mandated or needed." AHCCCS argues that the session law merely requires the implementation of a specific adjustment analysis. We disagree.

The session law requires that hospitals file a volume and charges report with DHS, and that DHS then compare projected volumes and charges during a base period with the current period. AHCCCS is then directed to adjust ABC factors based on this information, "if necessary." § 22(E). Obviously, the session law left to AHCCCS' discretion the determination of why and when the ABC factors would be adjusted. Although it dictates the information to be supplied on the volume and charges report and the time periods to be considered, the session law neither instructs AHCCCS on how this information is to be interpreted, nor when the adjust-

crease" because the charge per volume increased    from $225 to $231.25 per day.

ments must be made. In addition, the session law leaves unanswered such questions as how hospitals are to be broken down into departments, what units of volume are to be used, how departments with different units of volume are to be weighted against one another, and how distortions in volume attributable to the introduction of new services midway through a reporting period are to be handled. We agree with the AHCCCS hearing officer that "the 1989 session law is very broad and cannot be said to direct a 'certain course of action,'" such that the law is self-executing. AHCCCS may have decided these questions, but they did so privately. At no time were these rules publicly articulated so that hospitals and other interested parties could readily examine them and perhaps question their methodology.

■ We further disagree with AHCCCS' contention that forcing them to promulgate a rule would "tie their hands" and not allow them to fulfill the statutory mandate to promptly correct ABC adjustments without lengthy rulemaking and protracted public hearings and industry input. In 1989, AHCCCS could have sought to enact a rule under the emergency provisions of A.R.S. section 41–1026. It then could have considered the public's input and fashioned a permanent rule. The entire rulemaking process could have been completed within 30 to 120 days. *See* A.R.S. §§ 41–1022 to 41–1026. This would comport with the APA's goal of striking a reasonable balance between the need for efficient, economical, and effective government administration and the need to provide persons adequate procedural protections when agencies take actions affecting them. *See* 1981 Model State Administrative Procedure Act, "Prefatory Note," 15 U.L.A. 5 (master ed. 1990). In light of the intent of the APA to increase public access to agencies and facilitate and encourage public participation in the formulation of rules, we do not find a 30- to 120-day delay in the enactment of a permanent rule so alarming that AHCCCS should be excused from compliance with the APA.

Finally, AHCCCS' reliance on *Arizona Corp. Comm'n. v. Palm Springs Util.,* 24 Ariz.App. 124, 536 P.2d 245 (1975), in support

of its proposition that AHCCCS need not promulgate a rule so long as it has a rational statutory basis for its action is misplaced. We find that case inapplicable here, where we are dealing with a general rule applied to all hospitals.

In *Palm Springs Util.,* this court was reviewing a utility's challenge to a corporation commission order that the utility bring the quality of its water up to a minimum standard. The utility argued that the commission could not set standards for the utility's water requirements without first promulgating a rule. In reaching its decision, the court first recognized that "[u]nquestionably, as a general principle of administrative law, the promulgation of rules and regulations of general applicability is to be favored over the generation of policy in a piecemeal fashion through individual adjudicatory orders." *Id.* at 128, 536 P.2d at 249. The court then carved out an exception to the rule: when problems arise in a particular case which the agency could not reasonably foresee, or the problem is so specialized and varying in nature as to be impossible to capture within the boundaries of a general rule, then the agency has the power to deal with the problem on a case-to-case basis so long as there is a reasonable statutory or constitutional basis for its action. *Id.* at 129, 536 P.2d at 250.

■ Unlike *Palm Springs Util.,* we are not dealing with a specialized situation that may be endangering the health of a segment of the public, or a case where AHCCCS is monitoring a single hospital for compliance with industry standards. In the present case, AHCCCS has developed a general rule for reimbursement that uses the same analyses and methodology for all hospitals. The focus of the rule is the amount of payment for services, not the quality of those services or the health of the recipient of those services. This is not a situation where a general rule is impractical or impossible to formulate. A rule has already been developed by AHCCCS internally; it just has not been enacted properly.

## CONCLUSION

Because AHCCCS' methodology for adjusting ABC factors constitutes a rule under

the APA, and the APA was not complied with, AHCCCS' use of the resulting methodology was invalid. Accordingly, AHCCCS must compensate the hospitals for all claims for which reimbursement was reduced by the application of the unauthorized methodology.

This case is reversed and remanded for a hearing on damages.

EHRLICH, P.J., and VOSS, J., concur.