IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

REPUBLICAN NATIONAL COMMITTEE; REPUBLICAN PARTY OF ARIZONA, LLC;
AND YAVAPAI COUNTY REPUBLICAN PARTY,
*Plaintiffs/Appellants*,

*v.*

ADRIAN FONTES, IN HIS OFFICIAL CAPACITY AS ARIZONA SECRETARY OF STATE,
*Defendant/Appellee*,

VOTO LATINO, ARIZONA ALLIANCE FOR RETIRED AMERICANS, DEMOCRATIC
NATIONAL COMMITTEE, AND ARIZONA DEMOCRATIC PARTY,
*Intervenor-Defendants/Appellees*.

No. 2 CA-CV 2024-0241
Filed March 6, 2025

---

Appeal from the Superior Court in Maricopa County
No. CV2024050553
The Honorable Frank W. Moskowitz, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Kurt M. Altman P.L.C., Phoenix
By Kurt Altman and Ashley Fitzwilliams

and

First & Fourteenth PLLC, Colorado Springs, Colorado
By Christopher O. Murray, Pro Hac Vice, and Julian R. Ellis, Jr., Pro Hac Vice
*Counsel for Plaintiffs/Appellants*

Kristin K. Mayes, Arizona Attorney General
By Kara Karlson, Karen J. Hartman-Tellez, and Kyle Cummings, Assistant
Attorneys General, Phoenix
*Counsel for Defendant/Appellee*

Coppersmith Brockelman PLC, Phoenix
By D. Andrew Gaona and Austin C. Yost

and

Elias Law Group LLP, Washington, D.C.
By Lalitha D. Madduri, Pro Hac Vice, and Daniel J. Cohen, Pro Hac Vice
*Counsel for Intervenor-Defendants/Appellees Voto Latino and Arizona Alliance
for Retired Americans*

Perkins Coie LLP, Phoenix
By Alexis E. Danneman and Matthew R. Koerner

and

Herrera Arellano LLP, Phoenix
By Roy Herrera, Daniel A. Arellano, and Austin T. Marshall
*Counsel for Intervenor-Defendants/Appellees Democratic National Committee
and Arizona Democratic Party*

---

**OPINION**

Presiding Judge Gard authored the opinion of the Court, in which Chief
Judge Staring and Judge O'Neil concurred.

---

G A R D, Presiding Judge:

¶1    In this case, we consider whether the Arizona Secretary of
State's biennial promulgation of the Elections Procedures Manual (EPM),
*see* A.R.S. § 16-452, is subject to the Arizona Administrative Procedure Act
(APA), *see* A.R.S. §§ 41-1001 to 41-1039, and, if so, whether the Secretary
substantially complied with that Act's rulemaking procedures in
promulgating the 2023 EPM.  Also at issue is whether eight specific

2

provisions of the 2023 EPM contradict or directly conflict with state and federal laws.[1]

¶2          The Republican National Committee, Republican Party of Arizona, and Yavapai County Republican Party (collectively "the RNC") filed a statutory special action in superior court, seeking a preliminary injunction preventing the Secretary from implementing the EPM in the 2024 election.  The court denied the injunction and granted a motion to dismiss filed by the Secretary and several intervenor parties, concluding that the APA did not apply and that the challenged EPM provisions did not conflict with other laws.  The RNC appeals from that order.  We conclude that the APA applies and that the Secretary did not substantially comply with its provisions because he provided a public-comment period encompassing only half the time the APA requires.  In light of our resolution, we do not address the RNC's challenges to the specific EPM provisions.[2]  We accordingly reverse and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

¶3          The chief election officer for the State of Arizona, the Secretary of State, is tasked every other year with drafting an EPM "to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for [elections]."  § 16-452(A).  The Secretary must submit the manual to the governor and the attorney general for approval no later than October 1 of each odd-numbered year preceding the

---

[1]In a separate decision order filed in October 2024, we denied the RNC's request, made in its opening brief, that we enjoin the 2023 EPM's use in the 2024 election.  *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (cautioning against enjoining election procedures on the eve of an election).  We also noted that the request was not properly raised in a standalone motion.  *See* Ariz. R. Civ. App. P. 6, 7(c), 13.

[2]The parties do not allege, nor does the record suggest, that the Secretary's failure to substantially comply with the APA in promulgating the EPM compromised any election's fairness, its accuracy, the right to vote, or any other substantive right associated with the election.  Rather, the error here was strictly procedural in nature.  *See* A.R.S. § 41-1002(B) (APA "creates only procedural rights and imposes only procedural duties").  We further emphasize that our decision does not affect any election that may occur before we issue our mandate in this matter.

general election. § 16-452(B). Upon approval, the EPM must be issued no later than December 31 of that year. *Id.* Once issued, "the EPM has the force of law" and any violation of a rule within it is punishable as a class two misdemeanor. *Ariz. Pub. Integrity All. v. Fontes*, 250 Ariz. 58, ¶ 16 (2020); § 16-452(C).

¶4            On July 31, 2023, the Secretary published a 259-page draft EPM, allowing public comment for a period of fifteen days. On August 15, the RNC submitted a formal comment, raising concerns about the "unnecessarily restrictive" and short public-comment period, as well as several specific provisions in the draft EPM. The Secretary submitted a revised draft EPM to the governor and attorney general for review on September 30, acknowledging the draft had been posted for public comment "[i]n keeping with the good practice of the prior Administration" and that suggestions had been incorporated "where appropriate." On December 30, the Secretary published a final EPM, spanning 268 pages, with the approval of the governor and attorney general.

¶5            Shortly thereafter, the RNC filed a verified special-action complaint for declaratory and injunctive relief. The first count alleged that the 2023 EPM was subject to the APA's rulemaking process and that the Secretary had failed to comply with the APA's notice-and-comment requirements. Accordingly, the RNC sought a declaration invalidating the EPM and an injunction prohibiting its enforcement and implementation in the 2024 election. The complaint also set forth eight counts "in the alternative" challenging specific provisions of the EPM as conflicting with state and federal laws.

¶6            A few days later, the RNC moved for a preliminary injunction on the EPM-invalidation claim, as well as on six of the eight alternative claims challenging particular EPM provisions. The Secretary opposed the request and moved to dismiss the complaint for lack of standing and failure to state a claim under Rule 12(b)(1) and (6), Ariz. R. Civ. P. In May 2024, the superior court heard oral argument on the motions and took the matter under advisement.

¶7            The superior court thereafter dismissed the complaint for failure to state a claim, concluding that the APA procedures did not apply to the promulgation of a valid EPM because the EPM statute, § 16-452, provides an independent procedure. The court also upheld each of the challenged provisions, finding that they did not contradict or directly conflict with federal or state laws. The court entered final judgment in the

Secretary's favor, and this appeal followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1). *See* Ariz. R. P. Spec. Act. 10(c).

## Discussion

**¶8** The RNC argues the superior court erred by concluding that the APA's rulemaking process does not apply to the Secretary's EPM promulgation, and that that the Secretary's failure to comply with the APA here invalidates the 2023 EPM. Alternatively, the RNC maintains that, if the EPM is deemed valid, eight of its specific provisions should be independently invalidated because they conflict with federal and state statutes or exceed the Secretary's authority. We agree on the first argument, which renders the second moot.

## I. Standing

**¶9** As a preliminary matter, the Secretary and intervenors Arizona Alliance for Retired Voters and Voto Latino encourage us to affirm the superior court's dismissal without reaching the merits because the RNC lacks standing to challenge the 2023 EPM. Specifically, the Secretary contends that the RNC "fail[ed] to explain how either the way the EPM was enacted or the enforcement of any of the individually challenged provisions harms—or even affects—them in any way." The RNC responds that it has met its burden to establish standing because it primarily sought declaratory relief invalidating the EPM under the APA rulemaking procedure. *See* A.R.S. § 41-1034(A) (citing Uniform Declaratory Judgments Act, A.R.S. §§ 12-1831 through 12-1846). Although the superior court expressed "concerns about whether [the RNC has] standing for some or all of [its] claims," it did not expressly rule on that issue.

**¶10** "Standing is a question of law that we review de novo." *Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, ¶ 7 (App. 2008). "[T]he question of standing in Arizona is not a constitutional mandate since we have no counterpart to the 'case or controversy' requirement of the federal constitution." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 6 (1985); *see* Ariz. Const. art. VI; U.S. Const. art. III, § 2, cl. 1. Therefore, "we are not constitutionally constrained to decline jurisdiction based on lack of standing." *Bennett v. Napolitano*, 206 Ariz. 520, ¶ 31 (2003) (quoting *Sears v. Hull*, 192 Ariz. 65, ¶ 24 (1998)). Instead, standing "only raises 'questions of prudential or judicial restraint.'" *Strawberry Water Co.*, 220 Ariz. 401, ¶ 7 (quoting *Armory Park Neighborhood Ass'n*, 148 Ariz. at 6).

**¶11** Nonetheless, Arizona has "established a rigorous standing requirement." *Fernandez v. Takata Seat Belts, Inc.*, 210 Ariz. 138, ¶ 6 (2005). The standing inquiry in Arizona is whether "under all circumstances, the party possesses an interest in the outcome of the litigation." *Strawberry Water Co.*, 220 Ariz. 401, ¶ 8. Generally, to establish standing, a party must demonstrate "an injury in fact, economic or otherwise, caused by the complained-of conduct, and resulting in a distinct and palpable injury giving the plaintiff a personal stake in the controversy's outcome." *Id.*

**¶12** Section 41-1034(A), however, allows "[a]ny person who is or may be affected by a rule" under the APA to "obtain a judicial declaration of the validity of the rule by filing an action for declaratory relief." We have previously held that a party may seek declaratory relief under this statute when "the plaintiff asserts that a rule is invalid due to any agency's failure to comply with the applicable statutory procedures when promulgating the rule." *Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, ¶ 22 (App. 2000). We have also interpreted the language, "[a]ny person who is or may be affected," in an analogous statute, *see* A.R.S. § 49-497, as eliminating "the need to show a distinct and palpable injury" and instead granting standing "if a person 'may' be affected." *Home Builders Ass'n of Cent. Ariz. v. Kard*, 219 Ariz. 374, ¶¶ 25-27 (App. 2008).

**¶13** Section 12-1832 of Arizona's Uniform Declaratory Judgments Act allows "[a]ny person . . . whose rights, status or other legal relations are affected by a statute" to have a court determine "any question of construction or validity arising under the . . . statute" and "obtain a declaration of rights, status or other legal relations thereunder." The purpose of the act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations" and is therefore remedial. A.R.S. § 12-1842. Standing under the Act requires "that there be an actual controversy ripe for adjudication and that there be parties with a real interest in the questions to be solved." *Bd. of Supervisors of Maricopa Cnty. v. Woodall*, 120 Ariz. 379, 380 (1978). Similar to § 41-1034(A), which obviates the requirement to show a distinct and palpable injury, an existing injury is not required under the Act so long as the relief sought is "based on an existing state of facts" and "is not advisory." *Ariz. Creditors Bar Ass'n v. State*, 257 Ariz. 379, ¶ 12 (App. 2024) (quoting *Land Dep't v. O'Toole*, 154 Ariz. 43, 47 (App. 1987)); *Ariz. Sch. Bds. Ass'n v. State*, 252 Ariz. 219, ¶ 16 (2022); *see Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, ¶ 29 (2022).

¶14        In its complaint, the RNC claimed that each of its county, state, and national party committees "promote[] the election of Republican candidates" and have "an interest in the administration" and "procedural integrity of Arizona elections," as well as "the competitive environment affecting Republican candidates." Each of the committees "expend[] significant resources supporting Republican candidates . . . and some of these resources will necessarily be diverted if election rules are not made consistent with Arizona law." The RNC reiterates those claims on appeal and emphasizes that, because the EPM governs "the conduct of persons campaigning, voting, observing, administering, and reporting on elections," and because failure to follow the EPM is a crime, the RNC, as well as its candidates and volunteers, are necessarily affected. At oral argument, the RNC contended that it meets the test for standing because an actual controversy exists between parties who are sufficiently interested here.

¶15        We agree with the RNC. The relief the RNC sought by filing a declaratory action arose from "an existing state of facts"—it is undisputed that the Secretary made a draft of the EPM available to the public for commentary for a period of fifteen days, which is shorter than that provided under § 41-1023(B). *Ariz. Creditors Bar Ass'n*, 257 Ariz. 379, ¶ 12. And because the RNC has demonstrated its members, candidates, and volunteers are necessarily affected by the administration of procedures that govern every stage of the electoral process, the RNC has established it is a party with a "real interest in the questions to be solved." *Bd. of Supervisors of Maricopa Cnty.*, 120 Ariz. at 380. We therefore conclude the RNC has standing to seek declaratory relief under the APA to challenge the validity of the 2023 EPM. We address the merits below.

## II.  Applicability of the APA rulemaking process to the EPM

¶16        "We review de novo an order granting a motion to dismiss for failure to state a claim." *Abbott v. Banner Health Network*, 239 Ariz. 409, ¶ 7 (2016). We likewise "review issues construing statutes and rules de novo." *Ariz. Pub. Integrity All.*, 250 Ariz. 58, ¶ 8. We begin with the text when construing statutes. *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, ¶ 8 (2023). "We interpret statutes 'according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise.'" *In re Drummond*, 257 Ariz. 15, ¶ 19 (2024) (quoting *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023)). We will not "read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself," nor will we

"'inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions.'" *Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965)). If "a statute's plain language is unambiguous in context, it is dispositive." *In re Drummond*, 257 Ariz. 15, ¶ 5.

**¶17** As we discussed above, the legislature has delegated to the Secretary of State the biennial duty to prescribe rules in an official instructions and procedures manual to govern state elections. § 16-452. The process with which the Secretary must comply in issuing the EPM is outlined in the statute:

> A. After consultation with each county board of supervisors or other officer in charge of elections, the secretary of state shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots. The secretary of state shall also adopt rules regarding fax transmittal of unvoted ballots, ballot requests, voted ballots and other election materials to and from absent uniformed and overseas citizens and shall adopt rules regarding internet receipt of requests for federal postcard applications prescribed by § 16-543.

> B. The rules shall be prescribed in an official instructions and procedures manual to be issued not later than December 31 of each odd-numbered year immediately preceding the general election. Before its issuance, the manual shall be approved by the governor and the attorney general. The secretary of state shall submit the manual to the governor and the attorney general not later than October 1 of the year before each general election.

*Id.* Violation of any rule that is adopted is punishable as a class two misdemeanor. § 16-452(C).

¶18    The APA sets out separate procedures that agencies must follow when promulgating rules, which include, among other things, public notice, a public-comment period, and the opportunity to request an oral proceeding.  §§ 41-1001 to 41-1039.  These requirements "ensure that those affected by a rule have adequate notice of the agency's proposed procedures and opportunity for input into the consideration of those procedures."  *Carondelet Health Servs., Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 182 Ariz. 221, 226 (App. 1994).  The APA's rulemaking procedures "apply to all agencies and all proceedings not expressly exempted."  § 41-1002(A).  Accordingly, a "rule is invalid unless it is consistent with the statute, reasonably necessary to carry out the purpose of the statute and is made and approved in substantial compliance with §§ 41-1021 through 41-1029 and articles 4, 4.1, and 5 of this chapter, unless otherwise provided by law."  § 41-1030(A).  And the APA contemplates an interplay between the duties it imposes on agencies and those imposed by other statutes:

> This chapter creates only procedural rights and imposes only procedural duties. They are in addition to those created and imposed by other statutes. To the extent that any other statute would diminish a right created or duty imposed by this chapter, the other statute is superseded by this chapter, unless the other statute expressly provides otherwise.  § 41-1002(B).

¶19    There is no dispute that the EPM constitutes a collection of "rule[s]" as defined by the APA, *see* § 41-1001(21),[3] and that the Department and Secretary of State are regulatory "agenc[ies]" subject to the APA, *see* § 41-1001(1).[4]  At issue on appeal is whether the adoption and promulgation of the EPM, under § 16-452, is subject to the rulemaking process under the APA, §§ 41-1001 to 41-1039.

¶20    The superior court concluded that the EPM's promulgation is not subject to the APA's procedures.  The court relied on § 41-1030(A) to

---

[3]A "rule" is defined as "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency."

[4]An "agency" is defined as "any board, commission, department, officer or other administrative unit of this state, including the agency head."

conclude that the legislature has "otherwise provided by law" a procedure for the Secretary to promulgate the EPM under § 16-452 that is separate from, and not subject to, APA guidelines. The court rejected the RNC's argument that the APA requires an express exemption, concluding that such a requirement would render the language "unless otherwise provided by law" in § 41-1030(A) meaningless. The court also found deadline-related and gubernatorial approval conflicts between § 16-452 and the APA, and concluded that the EPM statute supersedes the APA.

¶21        We begin with the plain reading of § 41-1002, which unambiguously states that all agencies are subject to the APA's rulemaking procedures unless "expressly exempted." There are two ways in which the legislature has expressly exempted an agency from the APA: (1) by listing a number of exempted subject-matter specific rules and agencies within the APA in § 41-1005 titled "Exemptions," and (2) by including express language in implementing statutes indicating they are "exempt from title 41, chapter 6." *See, e.g.*, A.R.S. §§ 3-109.03(C) (exempting Department of Agriculture), 16-974(D) (exempting rules adopted by Citizens Clean Elections Commission), 17-255.01(D) (exempting order issued by director of Game and Fish Department but requiring publication in administrative register), 20-1241.09(B) (exempting Department of Insurance and Financial Institutions), 36-736(A) (exempting orders issued by local health officers).

¶22        Here, neither the EPM statute, § 16-452, nor the APA, § 41-1005, expressly exempts the EPM from the APA's rulemaking process. *See Carondelet Health Servs., Inc.*, 182 Ariz. at 228; *Ariz. State Univ. ex rel. Ariz. Bd. of Regents v. Ariz. State Ret. Sys.*, 237 Ariz. 246, ¶ 23 (App. 2015) ("The statute's silence does not exempt the [agency] from the APA's rulemaking procedure."). The superior court, however, relied on § 41-1030(A), which states that a rule is invalid if it is not made and approved in substantial compliance with the APA procedures "unless otherwise provided by law," to conclude that an exemption exists. The RNC argues that this statute is remedial and merely sets out conditions or requirements for a valid rule, recognizing that some rules "are not categorically invalid" for failing to follow the APA because "some rulemakings are *expressly exempt*" from that process. The RNC further contends that the superior court's interpretation of § 41-1030(A) "permitted an implied exemption not anywhere expressed." We agree.

¶23        As we have discussed, § 41-1002 provides that all agencies—including the Secretary and his Department—are subject to the APA rulemaking process unless "expressly exempted." The superior court's

interpretation of § 16-452 as providing an alternative procedure without any express reference to, or exemption from, the APA effectively recognizes a silent, implied exemption that contradicts and voids § 41-1002. *See Gries v. Plaza Del Rio Mgmt. Corp.*, 236 Ariz. 8, ¶ 20 (App. 2014) ("[R]elated statutes must be 'read together and harmonized[ ] to avoid rendering any clause, sentence or word superfluous, void, contradictory, or insignificant.'" (alterations in *Gries*) (quoting *State v. Cid*, 181 Ariz. 496, 499-500 (App. 1995))). Reading § 41-1002(A), § 41-1030(A), and § 16-452 in harmony, we interpret the "unless otherwise provided by law" language in § 41-1030(A) as reiterating § 41-1002's directive that any exemptions must be expressly made. If a subject-matter specific rule or department has not been expressly exempted, or otherwise provided with some alternative to the APA's procedure that expressly states that it is such an alternative, then that rule is invalid unless it was made in substantial compliance with the APA.

**¶24** Finally, we consider whether the rulemaking procedures in the APA and the EPM conflict. *See* § 41-1002(B). The Secretary argues "there is an irreconcilable conflict" between the statutes with respect to timing. First, the Secretary notes that the APA requires each agency on or before December 1 of each year to "prepare and make available to the public the regulatory agenda that the agency expects to follow during the next calendar year." § 41-1021.02(A). He contends that this is "incompatible with" the requirements of § 16-452(B) which require him to issue an EPM by December 31 of every odd-numbered year. He explains that this would require him "to lay out the regulatory agenda for the EPM before the start of the legislative session" and "to do so while carrying out the tasks associated with the primary and general elections." The Secretary further maintains the APA and EPM statutes conflict because the governor is exempt from the APA, and the APA procedures do not govern a "multi-agency process" as required by § 16-452. The Secretary concludes that the APA "would *supplant* the EPM statute and make compliance with its terms impossible" and that as a result, the EPM controls as the more recent and specific statute.

**¶25** But § 41-1002(B) states that the procedures and duties imposed under the APA are "in addition to" those imposed by other statutes. "To the extent that any other statute would *diminish* a right created or duty imposed by this chapter, the other statute is superseded" unless it "expressly provides otherwise." *Id.* (emphasis added). This subsection again emphasizes that any deviation from the APA's procedural process must be expressly permitted in an implementing statute. Here, the

Secretary does not explain how § 16-452 acts to diminish any rights created or duties imposed by the APA.  Nor does he explain how a conflict would result in § 16-452 superseding the APA when § 41-1002(B) provides for the opposite result.  Instead, the issues the Secretary raises here highlight the potential impracticalities of abiding by both the APA and the EPM procedures, but impracticalities do not equate to conflicts.  The APA and EPM statutes impose duties on the Secretary that may require him to begin promulgating the EPM earlier, but they are not inconsistent, do not directly conflict, and do not create impossible barriers to complying with both.  *See Carondelet Health Servs., Inc.*, 182 Ariz. at 229 (rejecting agency's argument that complying with APA would "tie their hands" with "lengthy rulemaking and protracted public hearings" because thirty to 120-day delay in enacting rule is not "so alarming" to warrant agency being excused from compliance).  We therefore conclude that, because not expressly exempted, the 2023 EPM was subject to the rulemaking procedures under the APA.  The superior court thus erred by dismissing the RNC's complaint on the basis of its failure to state a claim on which relief could be granted.  *See* Ariz. R. Civ. P. 12(b)(6).

## III. Substantial compliance with the APA

**¶26**        Having concluded that the 2023 EPM was subject to the APA's rulemaking process, we must next determine whether the Secretary substantially complied with the APA.  Section 41-1030(A) requires "substantial compliance" with the APA and directs that the absence of such compliance invalidates a rule.  Whether an agency has substantially complied with the APA in promulgating a rule presents a mixed question of law and fact; we generally defer to the superior court's factual findings but review de novo its ultimate legal conclusion.  *Helvetica Servicing Inc. v. Pasquan*, 249 Ariz. 349, ¶ 10 (2020).  The parties here do not dispute the underlying facts—that the Secretary allowed for a fifteen-day public-comment period and received and considered hundreds of comments, including comments submitted by the RNC.  We therefore determine as a legal matter whether the Secretary's process in promulgating the 2023 EPM substantially complied with the APA.

**¶27**        The APA requires an agency to "afford persons the opportunity to submit in writing statements, arguments, data and views on the proposed rule" for a period of "*at least* thirty days."  § 41-1023(B) (emphasis added).  Arizona courts have not interpreted "substantial compliance" under the APA.  In other contexts, the supreme court has defined "substantial compliance" as a "standard that . . . tolerates errors if

the purpose of the relevant statutory requirements was nevertheless fulfilled." *In Re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, ¶ 11 (2023). Applying this standard to the undisputed facts here, we cannot conclude that the Secretary's allowance of only half of the APA's minimum required comment period amounts to substantial compliance. During the fifteen-day public-comment period, the RNC raised concerns about the "unnecessarily restrictive" timeframe and requested that the Secretary extend the deadline by two weeks. The RNC noted that it had "preliminarily" identified the "most pressing changes to address" in the "brief time" that had been allotted for review. On appeal, the RNC reiterated that submitting comments during that timeframe had been "taxing" and that it needed more time to analyze the proposed rules and compile its comments. Because the RNC was prejudiced by the abbreviated comment period, we cannot say under the circumstances here that the 2023 EPM's promulgation process fulfilled the APA's purpose "that those affected by a rule have adequate notice of the agency's proposed procedures and the opportunity for input into the consideration of those procedures." *Carondelet Health Servs., Inc.*, 182 Ariz. at 226, 229 (further explaining intent of APA to "facilitate and encourage public participation in the formulation of rules"); *see Feldmeier v. Watson*, 211 Ariz. 444, ¶ 14 (2005) (court considering various factors to determine substantial compliance with statutory requirements in context of petitions for ballot initiatives including nature and purpose of requirements and extent of deviation from requirements); *Aesthetic Prop. Maint., Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 78 (1995) (substantial compliance inquiry includes whether failure to comply prejudiced party that statute seeks to protect). We thus conclude that the Secretary's promulgation of the 2023 EPM did not substantially comply with the requirements of the APA's rulemaking process.[5] § 41-1030(A).

**Disposition**

**¶28** We conclude that the 2023 EPM was subject to the rulemaking procedure under the APA and that the Secretary did not substantially comply with the APA's rulemaking process in promulgating the EPM. We therefore reverse the superior court's dismissal and final judgment and remand for further proceedings consistent with this decision.

---

[5]In light of our resolution, we need not address the RNC's alternative claims challenging eight specific provisions of the EPM on the basis that they contradict or directly conflict with state and federal statutes.