IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RESIDENTIAL UTILITY CONSUMER OFFICE; STUART THALER,
*Petitioners*,

*v.*

ARIZONA CORPORATION COMMISSION, an agency
of the State of Arizona; KEVIN THOMPSON, in his official capacity
as a member of the Arizona Corporation Commission; NICK MYERS,
in his official capacity as a member of the Arizona Corporation
Commission; LEA MARQUEZ PETERSON, in her official capacity
as a member of the Arizona Corporation Commission; RACHEL
WALDEN, in her official capacity as a member of the Arizona
Corporation Commission; RENE LOPEZ, in his official capacity as a
member of the Arizona Corporation Commission; ARIZONA WATER
COMPANY; ARIZONA PUBLIC SERVICE COMPANY; EPCOR WATER
ARIZONA, INC.; GLOBAL WATER - SANTA CRUZ WATER
COMPANY, INC.; GLOBAL WATER - PALO VERDE  UTILITIES
COMPANY, INC.; TUCSON ELECTRIC POWER COMPANY, UNS
ELECTRIC, INC.; UNS GAS, INC.; LIBERTY UTILITIES
(LITCHFIELD PARK WATER & SEWER) CORP.,
*Respondents*.

No. 1 CA-SA 25-0209

FILED 11-21-2025

Petition for Special Action from the Superior Court in Maricopa County
No. CV2025-011288
The Honorable Susanna C. Pineda, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____
COUNSEL

Coppersmith Brockelman PLC, Phoenix
By D. Andrew Gaona, Austin C. Yost, Kelleen Mull
*Counsel for Petitioner Residential Utility Consumer Office*

Residential Utility Consumer Office, Phoenix
By Daniel W. Pozefsky, Sarah Barrios Cool
*Counsel for Petitioner Residential Utility Consumer Office*

Arizona Center for Law in the Public Interest, Phoenix
By Daniel J. Adelman, Chanele N. Reyes
*Counsel for Petitioner Stuart Thaler*

Arizona Corporation Commission, Phoenix
By Thomas Van Flein, Mike Dailey, Maureen A. Scott
*Counsel for Respondent Arizona Corporation Commission*

Osborn Maledon, P.A., Phoenix
By Mary R. O'Grady, Joseph N. Roth, Michael Moorin
*Counsel for Respondent Arizona Public Service Company*

Osborn Maledon, P.A., Phoenix
By Meghan H. Grabel, Phillip W. Londen, Elias J. Ancharski, Jacob E. Abrahamian
*Counsel for Respondent Arizona Water Company*

Papetti Samuels Weiss McKirgan LLP, Scottsdale
By Randy Papetti, Lawrence Kasten
*Counsel for Respondent EPCOR Water Arizona Inc.*

Snell & Wilmer LLP, Phoenix
By Paloma M. Scheiferstein
*Counsel for Respondent Global Water – Santa Cruz Water Company, Inc. and Global Water – Palo Verde Utilities Company, Inc.*

Global Water Resources, Inc., Phoenix
By Robert J. Metli
*Counsel for Respondent Global Water*

Snell & Wilmer L.L.P., Phoenix
By Michael W. Patten
*Counsel for Respondents Tucson Electric Power Company, UNS Electric, Inc.,
UNS Gas, Inc.*

Tucson Electric Power Company, Tucson
By Megan C. Hill
*Counsel for Respondent Tucson/UNS*

Osborn Maledon, P.A., Phoenix
By Timothy J. Sabo
*Counsel for Respondent Liberty Utilities (Litchfield Park Water & Sewer) Corp.*

Arizona Attorney General's Office, Phoenix
By Mary M. Curtin, Andy McCoy
*Counsel for Amicus Curiae State of Arizona*

Holland & Hart LLP, Phoenix
By Michelle Brandt King, Austin W. Jensen
*Counsel for Amicus Curiae Arizona Large Customer Group*

Scharf-Norton Center for Constitutional Litigation, Phoenix
By Timothy Sandefur
*Counsel for Amicus Curiae Goldwater Institute*

---

## OPINION

Acting Presiding Judge Michael J. Brown delivered the opinion of the Court, in which Judge Cynthia J. Bailey and Judge Veronika Fabian joined.

---

**B R O W N,** Judge:

¶1        Petitioners Residential Utility Consumer Office and Stuart Thaler (collectively "RUCO" except as noted), requested a judgment declaring that the Arizona Corporation Commission ("Commission") improperly authorized utility companies to propose using formula rates in lieu of following traditional ratemaking methods. RUCO filed its complaint under the Administrative Procedure Act ("APA"), which authorizes any person affected by a "substantive policy statement" to seek a judicial declaration on whether the statement "constitutes a rule," and thus requires compliance with the APA's rulemaking procedures. *See* A.R.S. § 41-1034(B).

3

The superior court granted the Commission's motion to dismiss, holding the APA is inapplicable and the complaint was untimely. Because the Commission is subject to the APA, generally, and RUCO timely filed its complaint for declaratory relief, we vacate the court's ruling and remand for further proceedings.

## BACKGROUND

**¶2**        The Arizona Constitution gives the Commission authority to set rates that a public service corporation (utility) may charge its customers. Ariz. Const. art. 15, § 3; *Ariz. Pub. Serv. Co. v. Ariz. Corp. Comm'n*, 255 Ariz. 16, 18, ¶ 2 (App. 2023). The Commission's ratemaking power is full and exclusive. *Johnson Utils., L.L.C. v. Ariz. Corp. Comm'n*, 249 Ariz. 215, 221, ¶¶ 21, 23 (2020). When setting rates, the Commission "is required to ascertain the fair value of the company's property and use that value as a rate base for calculating just and reasonable rates." *Residential Util. Consumer Off. v. Ariz. Corp. Comm'n* ("*RUCO I*"), 240 Ariz. 108, 112, ¶ 15 (2016). The Commission may use a "full rate case" to determine fair value or it can utilize alternative methods, including reliance on updated versions of earlier submissions or summarized financial information. *Id.* at 113, ¶ 19. The full rate case uses a historical test year to calculate rates, with a "test year" defined as the "one-year historical period used in determining rate base, operating income and rate of return." *See* Ariz. Admin. Code ("A.A.C.") R14-2-103(A)(3)(p); *Freeport Minerals Corp. v. Ariz. Corp. Comm'n*, 244 Ariz. 409, 411, ¶ 7 (App. 2018) (explaining that a rate case determines rates using data from a test year).

**¶3**        In 2023, the Commission opened a "generic" docket ("Docket") to consider modifications to the test year rules. Several individuals and entities filed responses or comments. The Commission held a special open meeting in March 2024 to discuss potential changes to the test year rules, including authorizing future use of a formula rate plan. The Commission explained that the plan would use "pre-specified formulas" to "guarantee a return to the utilities – with any costs in excess of expectations given to the customers and any lessened costs paid back to the customer base."

**¶4**        In September 2024, RUCO sought leave from the Commission to intervene as a party in interest in the Docket under its statutory authority to intervene or appear on behalf of residential utility consumers before the Commission. *See* A.R.S. § 40-464(A)(2). A few days later, the Commission issued a procedural order explaining that "[g]eneric and rulemaking dockets do not have parties" and because "there are no parties to this

matter," any person desiring notice of the filings in the Docket must sign up to follow it on the Commission's website.

¶5         After the Commission held a second open meeting, two commissioners filed a draft policy statement on formula rates. In response, the Arizona Attorney General and RUCO filed statements opposing a policy that would allow alternative ratemaking methods, asserting such a change must be enacted through the APA's rulemaking procedures. The Commission then voted 3-2 to approve the policy statement authorizing use of formula rates. On December 31, 2024, the Commission issued an order, Decision No. 79647 ("Decision"), setting forth findings of fact and conclusions of law, and formally adopting the policy statement.

¶6         Although not a party, RUCO applied for rehearing and the Commission denied the application on February 19, 2025. Citing Article 15, Section 3 of the Arizona Constitution, which grants the Commission authority to "prescribe just and reasonable rates . . . by public service corporations," the Commission explained that such authority extends to "the method to be used in creating those rates," and the Decision was "an expression of this authority." At least eight companies have since filed applications with the Commission to implement formula rate plans.

¶7         On March 28, 2025, RUCO filed its complaint for declaratory judgment in the superior court under § 41-1034(B). RUCO alleged the Commission's adoption of the policy statement improperly authorized utilities to implement formula rates. Claiming such action should be confined in formal rulemaking procedures, RUCO asked the superior court to declare the Decision constitutes a "rule[,] not a substantive policy statement and is subject to the rulemaking mandates of the APA."[1] The APA requires public notice of proposed rulemaking and a 30-day window for public comment. A.R.S. §§ 41-1022(A), (D), -1023(B).

---

[1]     A rule is "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency." A.R.S. § 41-1001(21). A "substantive policy statement" is a "written expression which informs the general public of an agency's current approach to, or opinion of, the requirements of the federal or state constitution, federal or state statute, administrative rule or regulation, or final judgment of a court of competent jurisdiction, including, where appropriate, the agency's current practice, procedure or method of action based upon that approach or opinion. A substantive policy statement is advisory only." A.R.S. § 41-1001(24).

**¶8** Thaler and the Arizona Large Customer Group intervened as plaintiffs seeking the same relief. Several utilities, including Arizona Public Service Company ("APS"), intervened as defendants. The Commission then moved to dismiss RUCO's complaint, asserting the APA does not govern the Commission's "rulemaking or policymaking" when it exercises "constitutional ratemaking authority." The Commission also argued RUCO failed to timely appeal the Decision under A.R.S. § 40-254.01, which authorizes a party in interest to challenge any order of the Commission relating to ratemaking or rate design by appealing to this court.

**¶9** After briefing and oral argument, the superior court granted the motion because (1) "RUCO's claim for declaratory relief is solely based on the erroneous premise that the Commission's actions are subject to the APA," and (2) the complaint was untimely under A.R.S. § 40-254, which requires a "party in interest" to file a complaint in the superior court within 30 days after a rehearing is denied.

**¶10** RUCO timely appealed to this court and also sought special action relief in the Arizona Supreme Court, which declined jurisdiction without prejudice to seeking special action relief in this court. This special action followed.

## SPECIAL ACTION JURISDICTION

**¶11** "The decision to accept or reject special action jurisdiction is highly discretionary." *Am. Fam. Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 511, ¶ 9 (App. 2009). We accept jurisdiction for the following reasons.

**¶12** First, RUCO has no "equally plain, speedy, or adequate" remedy by appeal. Ariz. R.P. Spec. Act. 12(a). We recognize the unique posture this case presents: RUCO has a remedy by appeal, which is pending in this court. But given the cases pending before the Commission and the timeframe under which the Commission must proceed on those cases, *see* A.C.C. R14-2-103(B)(11)(d)–(g), we accept jurisdiction to avoid unnecessary litigation likely to occur after public utilities implement formula rates as authorized by the Decision. *See Arizonans for Second Chances, Rehab. & Pub. Safety v. Hobbs*, 249 Ariz. 396, 405, ¶ 20 (2020) (accepting special action jurisdiction to provide time-sensitive clarification). And significantly, we have a statutory obligation to prioritize this case. *See* A.R.S. § 40-255 (stating that when the Commission is a party, the case "shall be preferred and shall be heard and determined in preference to other civil matters except election actions").

6

¶13　　　　Second, acceptance of special action jurisdiction may be appropriate when the questions raised are of statewide importance. *Inzunza-Ortega v. Superior Court*, 192 Ariz. 558, 560 (App. 1998). The Arizona Constitution outlines the legislative authority to "prescribe rules and regulations to govern" Commission proceedings. Ariz. Const. art. 15, § 6. Ensuring that all state agencies, including the Commission, abide by constitutional limits is of statewide importance. *Dobson v. State ex rel. Comm'n on Appellate Ct. Appts.*, 233 Ariz. 119, 121, ¶ 7 (2013) ("Special action jurisdiction is appropriate here because the petition presents purely legal questions of statewide importance that turn on interpreting Arizona's Constitution."). Also, because the Commission's rules and ratemaking authority affect a substantial portion of Arizona's population, the questions raised in this petition have statewide importance.

¶14　　　　Third, accepting jurisdiction here reflects our attempt to provide "immediate appellate court guidance" on legal issues to further "the substantial interest in achieving judicial economy." *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 9 (App. 2001); *see also Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 434 (1982) (accepting special action jurisdiction "because it appears from the pleadings that there are numerous litigants who are uncertain as to the law, and that a decision of this court is necessary to settle the matter and prevent further and unnecessary litigation"). Under these circumstances, we can resolve this more expeditiously as a special action.

¶15　　　　Finally, while the Commission and APS argue against accepting jurisdiction, nothing in their extensive briefing asserts that the Commission or any of the respondents will be harmed by addressing the narrow questions presented here through a special action. No party has complained of insufficient time to brief the issues presented, interested stakeholders submitted amicus briefs, and the respondents, as well as the Commission, were able to respond to that briefing.

## DISCUSSION

¶16　　　　We address whether the superior court erred in concluding (1) the APA does not apply to the Commission, and (2) the timeliness of RUCO's petition is governed by statutes specific to the Commission (§§ 40-254, -254.01) instead of § 41-1034(B), which is part of the APA. Because these are purely legal issues requiring us to interpret statutes, our review is de novo. *Johnson Utils.*, 249 Ariz. at 219, ¶ 11. We also review a ruling on a motion to dismiss de novo. *City of Mesa v. Ryan*, 258 Ariz. 297, 299, ¶ 8 (2024).

**¶17** Interpreting statutes "requires us to determine the meaning of the words the legislature chose to use." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286, ¶ 31 (2023). "We do so neither narrowly nor liberally, but rather according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *Id.* We interpret statutory provisions in view of the entire text, considering the context and related provisions. *See Fann v. State*, 251 Ariz. 425, 434, ¶ 25 (2021).

**¶18** To begin, and contrary to the assertion made by intervening respondent APS, because RUCO seeks a declaratory judgment challenging the validity of the Decision, the case was ripe once the Commission issued the Decision. Under the plain language of § 41-1034(B), a person may seek declaratory relief when "the plaintiff asserts that a rule is invalid due to an agency's failure to comply with the applicable statutory procedures when promulgating the rule." *Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, 537, ¶ 22 (App. 2000).

### A. Applicability of the APA

**¶19** RUCO argues the superior court erred in holding that the Commission was exempt from the entire APA. Under Arizona law, the APA governs the rulemaking process for all state agencies unless expressly exempted. A.R.S. § 41-1002(A). The Commission is considered a state agency, albeit one with its own constitutional grant of authority. A.R.S. § 41-1001(1) ("'Agency' means any board, commission, department, officer or other administrative unit of this state, . . . whether created under the Constitution of Arizona or by enactment of the legislature."). The APA's requirements for public notice, public comment, and other procedural safeguards ensure transparency and accountability in rulemaking. *See Carondelet Health Servs., Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 182 Ariz. 221, 229 (App. 1994) ("[T]he intent of the APA [is] to increase public access to agencies and facilitate and encourage public participation in the formulation of rules.").

**¶20** The Commission acknowledged the APA's applicability, at least generally, when it adopted the purported substantive policy statement and declared that any person who believes "this substantive policy statement . . . impose[s] additional requirements or penalties on regulated parties . . . may petition the agency under section 41-1033, Arizona Revised Statutes, for a review of the statement." The cited statute is from the APA's chapter on rulemaking, A.R.S. §§ 41-1021 through -1039. And in denying RUCO's request for rehearing, the Commission explained that following

"the APA rulemaking process when setting or testing a rate formula" is not required "*as long as* the [Commission's] actions fall within the . . . constitutional adjudicatory or ratemaking functions and do not involve the promulgation of substantive rules." (Emphasis added.) These statements contradict the Commission's assertion in this proceeding that it is exempt from the entire APA.

**¶21** Even assuming the Commission's statements do not constitute waiver of its attempt to distance itself from the APA, we are not persuaded by the Commission's suggestion that caselaw supports a blanket exemption. The Commission cites *US West Communications, Inc. v. Arizona Corp. Comm'n*, which held that the Commission's rulemaking is not subject to the Governor's Regulatory Review Council but is subject to attorney general review under § 41-1044(A). 197 Ariz. 16, 22–23, ¶ 26 (App. 1999) ("Rules are invalid if not adopted and approved in accordance with the procedure outlined by [§ 41-1044]."). That section is itself part of the APA, so *US West* supports RUCO's argument that the Commission is subject to the APA. Next, the Commission cites *State ex rel. Corbin v. Arizona Corporation Commission*, 143 Ariz. 219 (App. 1992), for the proposition that the Commission's procedural orders are not subject to the APA. But *Corbin* also supports RUCO's position because this court rejected

> the Commission's contention that its constitutional genesis gives rise to the claimed complete procedural autonomy in rate proceedings, free from legislative control or judicial scrutiny and review. . . . [A]rt. 15, § 6 of the Arizona Constitution authorizes the legislature to regulate the procedural aspects of [the] Commission. . . . The legislature has exercised this constitutionally delegated power . . . by making Arizona's administrative procedure act applicable to commissions created by constitutional provisions.

*Id.* at 224–25. The Commission also cites a footnote in a dissent that conflates an exemption to one article with an exemption to the entire chapter. *See Sw. Paint & Varnish Co. v. Ariz. Dep't of Env't Quality*, 194 Ariz. 22, 29, ¶ 30 n.7 (1999) (McGregor, J., dissenting) (listing the Commission, along with other agencies, as being exempt from the entire APA because A.R.S. § 41-1092.02 exempts the Commission from the article describing the Uniform Administrative Hearing Procedures).

**¶22** We recognize the Commission is exempt from various provisions of the APA, including Article 5, which creates the Governor's Regulatory Review Council. A.R.S. § 41-1057(A)(2) ("[T]his article does not

apply to . . . [t]he corporation commission, which shall adopt substantially similar rule review procedures."). But exempting the Commission from one article of the APA does not indicate the legislature intended to exempt it from the APA broadly. Indeed, if the Commission was already exempt from the APA, specific exemptions such as § 41-1057(A)(2) would be meaningless.[2] *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143, ¶ 10 (2008) ("We . . . avoid interpretations that render statutory provisions meaningless, unnecessary, or duplicative.").

**¶23** Finally, the legislature knows how to exempt certain agencies from various provisions of the APA when it deems such exemptions are appropriate. *See, e.g.*, A.R.S. § 41-1005(D) (exempting the Arizona Board of Regents and the institutions under its jurisdiction from articles 2–5 of the APA); § 41-1009(N)(4) (exempting the Commission from certain inspection and audit requirements when issuing certificates of convenience and necessity). But the legislature has not granted the Commission an exemption from the entire APA. Contrary to the superior court's decision, the Commission is subject to the declaratory relief the legislature authorized under § 41-1034, which provides a specific remedy for any person to seek a judicial declaration whether an agency's substantive policy statement should have been adopted as a rule.

### B. Timeliness

**¶24** The superior court also reasoned that dismissal of RUCO's complaint was appropriate based on untimeliness, citing § 40-254's requirement that "any party in interest . . . [who is] dissatisfied with an order or decision of the [C]ommission" may file a complaint "within thirty days after a rehearing is denied or granted, and not afterwards." RUCO asserts its complaint was timely under § 41-1034 because it falls within the one-year limitation for a claim against a public entity under A.R.S. § 12-821. The Commission argues timeliness is governed instead by § 40-254.01(A), which mandates that "any party to a proceeding before the [C]ommission" must file a notice of appeal *in the court of appeals* within 30 days after rehearing is denied or granted. A.R.S. § 40-254.01(A) (emphasis added). But the Commission ignores the plain language of the APA, which directs any declaratory judgment action to be brought "in the *superior court* in

---

[2] The parties dispute the applicability of this court's opinion in *Republican National Committee v. Fontes*, __ Ariz. __, 566 P.3d 984 (App. 2025), addressing whether promulgation of the Election Procedures Manual is subject to the APA. However, our supreme court vacated the opinion through an order filed Oct. 16, 2025.

Maricopa county."   A.R.S. § 41-1034(B) (emphasis added).   A person seeking a declaratory judgment under § 41-1034 cannot possibly comply with both statutes.

**¶25**        According to APS, however, RUCO's complaint was untimely because the Commission issued a decision denying RUCO's application for rehearing on February 19, and thus an action to challenge that decision was due at the latest by March 21.   *See* A.R.S. § 40-254(A) (requiring the challenging action to begin within 30 days of the denial or grant of a rehearing "and not afterwards").   Applying that requirement, the superior court found that RUCO's complaint was untimely because it was filed on March 28.   For several reasons, we disagree.

**¶26**        First, § 40-254 describes how a "party in interest" may seek review of a Commission action, but RUCO was not a party in interest. RUCO tried to intervene in the Docket according to the process outlined in the Arizona Administrative Code, which explains the rules of practice and procedure before the Commission.   A.A.C. R14-3-105(A), (B).   But the Commission rejected RUCO's effort to intervene, explaining that *generic* and *rulemaking* dockets do not have parties.   And even though RUCO attended the open meetings and provided testimony and comments about formula rates, such an appearance does not make RUCO a party. *See* A.A.C. R14-3-105(C) ("[A]ny consumer . . . may appear at any proceeding and make a statement on his own behalf . . . [but a] person so appearing shall not be deemed a party to the proceedings.").   Thus, neither RUCO nor Thaler was a party in interest to the Commission proceeding and could not challenge the Decision under § 40-254.

**¶27**        Nonetheless, APS argues RUCO's claim is barred for failure to comply with § 40-254, regardless of whether the APA applies.   This argument fails because APS does not explain how a party can possibly challenge an order covered by § 40-254 when the Commission uses a generic docket, thereby precluding intervention by those seeking to formally participate in the proceeding.

**¶28**        Second, § 40-254 states that the "action shall be tried and determined as other civil actions except as provided in this section," and the party in interest must "show by clear and satisfactory evidence that [the Commission's order or decision] is unreasonable or unlawful."   A.R.S. § 40-254(A), (E).   That burden is higher than the burden required in most other civil matters.   *See Tucson Elec. Power Co. v. Ariz. Corp. Comm'n*, 132 Ariz. 240, 243 (1982) ("Clear and satisfactory is the same as clear and convincing and is a standard of proof greater than by a preponderance of

the evidence." (citation modified)). APS's position would hold RUCO to a higher standard of proof and thereby undermine the legislature's choice to authorize declaratory relief under the APA to any person who desires to challenge a substantive policy statement.

**¶29** Third, accepting the superior court's reasoning would deprive § 41-1034 of any meaning as applied to the Commission. *See Mussi v. Hobbs*, 255 Ariz. 395, 401, ¶ 30 (2023) ("[W]e interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." (quoting *Molera v. Hobbs*, 250 Ariz. 13, 24, ¶ 34 (2020)); *Burns v. Ariz. Pub. Serv. Co.*, 254 Ariz. 24, 30, ¶ 23 (2022) ("We seek to give effect to every word, so as to render superfluous none of text. We also read the provision at issue in its broader context." (citation omitted)).

**¶30** APS, but not the Commission, urges us to apply § 40-254(F), which states that "no court of this state shall have jurisdiction to enjoin, restrain, suspend, delay or review any order or decision of the commission" except in accordance with the other subsections of that section. The superior court agreed, holding it lacked jurisdiction to grant the requested relief. But § 40-254, including subsection (F), must be interpreted in context with the legislature's enactment of § 41-1034.

**¶31** Accepting APS's position would require us to presume that the legislature, in adopting § 41-1034, intended that any person desiring to pursue such relief—as it relates to the Commission—(1) would need to apply for a rehearing, even though the person may not be a party; (2) would then have to file an action in superior court within 30 days after denial of the application for rehearing, seeking to "vacate, set aside, affirm in part, or remand with instructions" the order or decision; (3) would have to meet a higher burden of proof than what is required under § 41-1034; and (4) would need to show the order or decision is either "unreasonable" or "unlawful" instead of the much narrower legal question contemplated under § 41-1034: whether a substantive policy statement constitutes a rule. *See* A.R.S. §§ 40-253(A), -254(A),(E). Thus, APS essentially asks us to rewrite § 41-1034's unambiguous language to make it fit the requirements of §§ 40-253 and -254, which we cannot do. *In re McLauchlan*, 252 Ariz. 324, 326, ¶ 15 (2022) ("Absent the essential predicate of ambiguity, we cannot rewrite a statute based on the surmise that the legislature meant to draft it a different way.").

**¶32** Also, the legislature adopted the current versions of §§ 40-254 and -254.01 in 1991 but added § 41-1034(B) in 2000. *See* 1991 Ariz. Sess. Laws, ch. 247, §§ 1–2 (1st Reg. Sess.) (H.B. 2410); 2000 Ariz. Sess. Laws,

ch. 374, § 3 (2nd Reg. Sess.) (S.B. 1418). Thus, the APA's provision authorizing declaratory relief is a specific, later-adopted statute. *See Est. of Winn v. Plaza Healthcare, Inc.*, 214 Ariz. 149, 152, ¶ 16 (2007) (describing the rule of statutory construction that a more recent, specific statute will govern over a conflicting older, more general statute); *State v. Jones*, 235 Ariz. 501, 503, ¶¶ 8, 11 (2014) (holding that when two statutes conflict, the more recent, specific statute governs over the older, more general statute).

¶33 Because we reject the superior court's conclusion that the Commission is exempt from the entire APA, RUCO had the right to pursue declaratory relief as provided by the APA:

> Any person who is or may be affected by . . . [a] substantive policy statement that the person alleges to constitute a rule may obtain a judicial declaration on whether the . . . substantive policy statement constitutes a rule by filing an action for declaratory relief in the superior court in Maricopa county.

A.R.S. § 41-1034(B). This specific remedy is also highlighted in the APA's regulatory bill of rights, which explains that "[t]o *ensure fair and open regulation by state agencies*, a person . . . [m]ay allege that [a] . . . substantive policy statement constitutes a rule and have that . . . substantive policy statement declared void because [it] constitutes a rule as provided in § 41-1033." A.R.S. § 41-1001.01(A)(10). Nor can we ignore the plain legislative distinction as to who may seek relief under the statutes at issue here. *Compare* A.R.S. § 40-254(A) (providing judicial review to a "party in interest") *with* A.R.S. § 41-1034(B) (offering declaratory relief to "[a]ny person who is or may be affected by a rule").

¶34 Moreover, the APA "creates . . . procedural rights . . . in addition to those created . . . by other statutes," and if "any other statute would diminish a right created or duty imposed by this chapter, the other statute is superseded by this chapter, unless the other statute expressly provides otherwise." A.R.S. § 41-1002(B). The APA authorizes "any person who is or may be affected by" a substantive policy statement to seek declaratory relief. A.R.S. § 41-1034(B). Thus, this right to declaratory judgment supersedes other statutes that may narrow or diminish a right, including A.R.S. § 40-254(F). For these reasons, we conclude that RUCO's action for declaratory relief under § 41-1034(B) was timely filed within one year under § 12-821.

¶35 In sum, § 41-1034(B) authorizes judicial review under the circumstances presented in this litigation. Both RUCO and Thaler are "persons" who allege the Decision constitutes a rule. They further allege the Commission adopted the purported rule disguised as a substantive policy statement without the procedural protections provided by the APA for rulemaking. The Commission filed the draft policy statement on November 20, 2023, and voted to adopt it on December 3, 2023, but that timeline does not comply with the required 30-day window for public comment on proposed rulemaking. A.R.S. §§ 41-1001.01(A)(6)(a), -1022(A), (D), -1023(B). As explained above, neither RUCO nor Thaler could properly file a § 41-1034(B) challenge under § 40-254 or § 40-254.01. Instead, the only avenue petitioners have to exercise their statutory right to obtain a judicial determination on whether the Decision constitutes a substantive policy statement or a rule is under § 41-1034(B). Because they were denied that opportunity, the superior court erred in dismissing their complaint.

## C. Attorneys' Fees and Costs

¶36 Thaler requests an award of reasonable attorneys' fees under A.R.S. § 12-348(A)(4), which mandates an award of fees and other expenses to "any party . . . that prevails by an adjudication on the merits" in a "special action proceeding brought by the party to challenge an action by this state." We deny Thaler's request without prejudice, deferring to the superior court to decide whether to award fees incurred in this special action after a resolution on the merits. *See Yauck v. W. Town Bank & Tr.*, __ Ariz. __, __, ¶ 46, 568 P.3d 386, 397 (App. 2025). As a successful party in this special action, we award Thaler taxable costs upon compliance with Arizona Rule of Procedure for Special Actions 17(c).

## CONCLUSION

¶37 We accept jurisdiction and grant relief by vacating the superior court's order that dismissed RUCO's complaint. We express no opinion whether the Decision is a substantive policy statement or a rule.

